JOHN GLENN, Trustee *vs.* JOHN S. WILLIAMS and
HERMAN WILLIAMS, trading as JOHN S. WILLIAMS
AND BROTHER.

*Jurisdiction—Faith and credit given to a Decree of a Virginia
Court, in the Courts of this State—Decree making Assess-
ments upon Unpaid subscriptions to Capital stock—Stock-
holders—Right of plaintiff to sue—Statute of Limitations—
Pending suits no bar to a Recovery—Plea in Abatement—
Plea in bar.*

The National Express and Transportation Company was organized
in 1866, under a charter granted by the Legislature of Virginia in
1865, subject to the general laws of the State relating to corpora-
tions or joint stock companies. Among the provisions of such
general laws upon the subject, there is one which declares that
upon every subscription for shares in any joint stock company,
there shall be paid upon each share two dollars at the time of sub-
scribing, and the residue thereof as required by the president and
directors; and if any money which any stockholder has to pay
upon his shares, be not paid as required by the president and
directors, the same, with interest thereon, may be recovered by
warrant or action, according to amount, &c. The authorized capi-
tal stock of the Express Company was $5,000,000, (with the privi-
lege of increasing it to $10,000,000,) divided into shares of one
hundred dollars each, on which two dollars per share were payable
at the time of subscription, and the balance as called for by the
president and directors. Of this capital stock 40,044 shares were
subscribed. On the stock subscribed, calls or assessments were
made to the extent of about twenty per cent.; but a considerable
proportion of the calls was never realized. The company soon
became embarrassed, and determined to suspend its operations;
and on the 20th of September, 1866, under and by virtue of an
order and resolution of the board of directors, the president of the
company executed a deed of trust to three trustees, for the benefit
of the creditors of the company. That deed or assignment con-
veyed all the property of the corporation, including the balance
unpaid on subscriptions to the stock. In December, 1871, a credi-
tors' bill was filed in the Chancery Court of the City of Richmond

in the State of Virginia, where the corporation was located and had its principal office, against the corporation and certain of its officers, and against the trustees named in the deed of assignment. To this bill an amendment and supplement were filed in August, 1879, praying that the trustees named in the deed of assignment be removed and others appointed in their place; that an assessment on the unpaid capital stock be made; that the debts of the corporation be ascertained and paid, and for general relief. Upon this bill and amendment such proceedings were had as resulted in a decree of the Court, passed on the 14th of December, 1880, whereby the original trustees in the deed were, upon their own request, displaced, and J. G. appointed in their stead; an account of the debts due from the corporation taken and adjudged to be paid, and an assessment of thirty per cent. on the unpaid subscriptions to the capital stock made, with authority and direction to J. G. as trustee, to proceed, by suit or otherwise, and in such jurisdictions, as he might be advised, to collect such assessment. By virtue of the power and authority thus conferred upon J. G., an action was brought by him on the 9th of April, 1881, against J. S. W. and H. W., to recover of them thirty per cent. of their subscription to the capital stock of said Express Company. On demurrers to the pleading, it was HELD :

1st. That the Chancery Court of the City of Richmond by proper process acquired jurisdiction of the cause as against the National Express and Transportation Company and the trustees, and the decree as against those parties was entitled to full faith and credit in the Courts of this State.

2nd. That the Court had power and jurisdiction to make assessments upon the unpaid subscriptions to the capital stock of the corporation to raise funds with which to pay its debts, and the decree of the Court determining and making an assessment upon the capital stock for such purpose, was binding and effective upon the stockholders who were not, in their individual capacities, parties to the cause.

3rd. That the plaintiff was legally appointed a trustee in the place of those removed, and was fully invested with the right and power to sue in his own name as trustee.

4th. That it was not competent to the defendants to plead and rely upon the Statute of Limitations of this State, as a bar to the various debts due from the corporation, and which had been found to be owing, and adjudged to be paid, by the decree of the Rich-

mond Court, and for the payment of which the assessment upon the unpaid subscriptions to the capital stock was ordered.

5th. That the Statute of Limitations began to run only from the time of the assessment made by the decree of the Court in Virginia, and could form no bar to the right to recover in this action.

6th. That the institution and pending of other suits in equity, not by the plaintiff, but by other parties, and in several respects for different purposes, could form no legal bar to the recovery in this action.

Matters in abatement and matters in bar cannot be pleaded together; the pleas in bar supersede those in abatement.

To constitute a good plea in bar, the matter pleaded, must, if true, afford a full and complete answer to the action, and show that there is no right of recovery.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, STONE, ALVEY, ROBINSON, and IRVING, J.

*John Howard*, and *Charles Marshall*, for the appellant.

1. The creditors secured by the deed of trust, the surviving trustees in the deed, The National Express and Transportation Company, and the President and Board of Directors, were all formal parties, and duly before the Richmond Chancery Court, by appearance, or due service of legal process; and for all the purposes of that suit, the stockholders were in legal effect, also fully, parties, and before the Court; for the original stockholders, by their acceptance of the charter, and the subsequent purchasers by becoming members, assented and agreed to the terms and conditions of the Act of incorporation, or articles of association, and the defendant stockholders, now before this Court, with all the rest, thereby expressly stipulated and agreed, (alike for the benefit and convenience of them-

selves and the public,) that they might and should, as the charter provided, "contract, and be contracted with, sue and be sued, and implead and be impleaded," in respect of the corporate contracts, property and rights, collectively, in the name, and by the agency of the corporation, and thus, by agreement and representation, they became the parties to the Richmond suit, brought by the creditors to enforce their corporate contracts, and submitted themselves to the forum of the domicile of the corporation in which the suit was instituted, and the decree of December, 1880, was rendered, and are bound by that decree, precisely as if made formal parties, and personally served with process.

For while it is true, that no man is bound by a judgment or decree to which he is not a party or privy, and of which he has not had notice, yet it is equally true, that one may agree to be sued in any particular way or name, or by any mode of agency, and to receive notification of legal proceedings in any manner that his interests or convenience may require, and if so sued and notified, he is just as fully, and as firmly bound by all of the proceedings in the suit, as if he had entered into no such engagement, and were made a formal party and duly served with process and notified in person. *Vallee vs. Dumergue,* 4 *W. H. & G.,* (4 *Exch.,*) 289; *Bank of Australasia vs. Harding,* 9 *M. G. & S.,* (67 *E. C. L.,*) 660; *Bank of Australasia vs. Nias,* 4 *E. L. & E.,* 252; *Copin vs. Adamson, L. R.,* 9 *Exch.,* 345; *Rousillon vs. Rousillon, L. R.,* 14 *Ch. Div.,* 351, 371; *Freeman on Judgments, secs.* 177 *and* 590; *Ohio and M. R. R. Co. vs. Wheeler,* 1 *Black,* 286; *Muller vs. Dows,* 94 *U. S. R.,* 444; *Morawetz on Private Corporations, sec.* 619; *Ogilvie vs. Knox Ins. Co.,* 22 *How.,* 387; *Hatch vs. Dana,* 101 *U. S. R.,* 205; *Stevens vs. Fox,* 83 *N. Y.,* 313; *Hall vs. U. S. Ins. Co.,* 5 *Gill,* 484; *Matthews vs. Albert,* 24 *Md.,* 527; *Weber vs. Fickey,* 52 *Md.,* 500.

2. The decree was final and conclusive upon the merits, until reversed, as to all the matters then in controversy

and thereby determined, and the Court of Common Pleas of Baltimore, and its jury, were not a Court of Appeal to review the decision of the Richmond Chancery Court. This would be true even were it the decree of a purely foreign Court. *Bank of Australasia vs. Niaz,* 71 *E. C. L.,* 717, 734, 738, 4 *Eng. L. & Eq.,* 252, (where it is best reported;) *De Cosse Brissac vs. Rathbone,* 6 *H. & N.,* (*Exch.,*) 301; *Vanquelin vs. Bouard,* 109 *E. C. L.,* 341, (d.) 368; *Ricardo vs. Garcias,* 12 *Clark & Finnelly,* 368; *Martin vs. Nicolls,* 6 *Eng. Chan.,* (3 *Sim.,*) 459; *Godard vs. Gray, L. R.,* 6, *Q. B.,* 137, (1875;) *Ellis vs. McHenry, L. R.,* 6 *C. P.,* 128; *Scott vs. Pilkington,* 110 *E. C. L.,* 41, *and note, p.* 44, *et seq.; Story's Conflict of Laws,* (Ed. 1872,) *secs.* 603- 609.

But this is a decree of the Court of a sister State, and by the Constitution of the United States, and the Act of Congress of 1790, stands upon the footing of a domestic decree—a decree of a Court of record in Maryland—and "is entitled to the same credit, validity and effect in every other Court within the United States, which it had in the State where it was rendered; and whatever pleas would be good to a suit thereon in such State, and none others, can be pleaded in any other Court within the United States," 3 *Wh.,* 234. The Act of Congress is as follows: "The records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every Court in the United States, as they have by law and usage in the Courts of the State from whence the said records are, or shall be taken." *Act, May* 26, 1790, *ch.* 11; 2 *Story on Constitution, secs.* 1303–1313; *Hampton vs. McConnell,* 3 *Wh.,* 234; *McElmoyle vs. Cohen,* 13 *Pet.,* 312; *Hopkins vs. Lee,* 6 *Wheat.,* 109; *Pennington vs. Gibson,* 16 *How.,* 76; *Clarke vs. Day,* 2 *Leigh.,* 175; *Kemp vs. Mundel,* 9 *Leigh.,* 17; *Wernwag vs. Pawling,* 5 *G. & J.,* 500; *Bank of U. S. vs. Mer. B'k of Balt.,* 7 *Gill,* 415.

In Virginia, where this decree was rendered, it is certainly conclusive on other tribunals until reversed, (*Cottom vs. Cottom,* 4 *Rand.,* 192,) and even if erroneous, could not be impeached collaterally, except for fraud, or want of jurisdiction. *Lancaster vs. Wilson,* 27 *Grat.,* 624, 628, 630.

3. (*a.*) The matters thus concluded by the Richmond decree are, first, the debts due by the company. And the adjudication of these debts, as established claims against the company, is a sufficient answer to pleas five and six to the present action, raising the issues that the debts against the company were barred by limitations. But if that matter were open, it would be seen that in Virginia a debt secured by a deed of trust, or mortgage, is not subject to any Statute of Limitations, as to the trust fund dedicated to its payment. *Smith vs. Wash. & R. R. Co.,* 33 *Grat.,* 619; *Bowie vs. Poor School Society,* 1 *Math.,* (75 *Va. R.,*) 300, (1882.)

It equally disposes of plea eleven, and of all other inquiries touching the indebtedness of the corporation, and the consideration upon which any particular claim was founded, its legality, sufficiency and justice.

. (*b.*) The second matter concluded by the decree is the validity and construction of the deed of trust, with its priorities in favor of preferred creditors, whereby was established the assignment to the trustees of all the corporate assets, including the right to receive the unpaid subscriptions to the capital stock, but not the franchise or power to levy an assessment upon the same.

(*c.*) In the third place, the decree decided and concluded the question as to the right and duty of the Court to levy a call upon the unpaid subscriptions, and in actually making the call, adjudicated and settled the question alike as to the necessity and amount of the call, and the further question whether the judicial power to make the call had not then been barred by the Statute of Limitations. The

Glenn, Trustee *vs.* Williams.

jurisdiction thus exercised is well established. *Hatch vs. Dana*, 101 *U. S. R.*, 193; *Scovill vs. Thayer*, 105 *U. S. R.*, 142.

That adjudication disposes of all pleas in the present action seeking to raise any of those issues, and among them pleas four and seven, which seek to raise issues as to the Statute of Limitations, touching the right of action by the trustees upon unpaid subscriptions; for in its construction of the charter and of the deed of trust, the Court having held that no power passed to the trustees to make the call, and by itself having exercised the power, adjudicated that it had the right to do so, and at that time, and thus the Statute could only commence to run from the time a call was made, that is, from the date of the decree.

(*d.*) The remaining question decided by the decree was the power of the removal of the surviving trustees and the substitution of a new trustee in their stead, to execute the trusts of the deed. This power might well have been exercised under the ordinary jurisdiction of equity— 1 *Perry on Trusts*, sec. 275; *Batesville Ins. vs. Kaufman*, 18 *Wall.*, 154; *Hall vs. Bryan*, 50 *Md.*, 194, 210 but it was expressly authorized by statute, *Va. Code*, 1873, *ch.* 174, *sec.* 8, amended by Acts of 1874–5, page 423, in force when the deed was made and the decree entered, whereby in case of such substitution, by virtue of the statute, the substituted trustee was clothed with all the rights and powers of the original trustees. This statute was part of the contract and the means of its enforcement. *Homestead Cases*, 22 *Grat.*, 288; *Roberts vs. Coke*, 28 *Grat.*, 216, 217.

The statute reads as follows: * * "And in any case, when a trustee, and when there is more than one, all the trustees in any deed of trust shall have died, or removed beyond the limits of the State, or shall decline to accept the trust, or where, having accepted, it is in the opinion

of the Court, clearly for the benefit of the trust to allow the trustee to resign, having first made a final settlement of his accounts as such trustee, any person interested in the execution of the deed may apply, by motion, to the circuit, county, or corporation of any county, or corporation in which said deed is recorded, who may appoint a trustee or trustees, in the place of the trustee or trustees named therein, *and the trustee or trustees so appointed, and accepting the same, shall be substituted to all the rights, powers, duties and responsibilities of the trustee named in the deed of trust."*

·Under this statute, the Court designates the person to be substituted as trustee; but when the substitution is made, the trustee, by operation of law, takes under the deed of trust, and is authorized and empowered to execute the trusts prescribed, and among those express trusts is the right, duty and power to sue for the assets of the company. *High on Receivers,* secs. 211, 213.

Adjudication of this question by an actual substitution of the new trustees in the place of the old, settles and concludes the right of the substituted trustee to execute the trusts of the deed.

4. These were the matters which were directly adjudicated and settled by the said decree. But in its conclusive effect the decree did much more. Whatever constituted a defence in that Court ought to have been pleaded there. *Vanquelin vs. Bouard,* 109 *E. C. L.,* 341, (*d.,*) and numerous other cases cited *supra* in paragraph 2. Whereby it is shown to be settled law that "that which constitutes a defence in the foreign Court, is not pleadable in an action upon the judgment in this country."

Among the defences which might have been pleaded to that suit, was the pendency of the several suits in Baltimore brought by some of the creditors of the company. And if any danger was apprehended from the pendency of any of those suits, it was particularly appropriate that

its pendency should then have been pleaded. For all the creditors had submitted themselves to the jurisdiction of the Richmond Court, and claimed under the terms and priorities of the deed of trust, and the Court itself had taken control of the trust-fund and of the execution of the trusts of the deed, and it was entirely competent to that Court, as it is now, by an order in that suit, to restrain or suspend action by the creditors in the Baltimore suits, in order that the trust-fund might be brought into that Court for administration, as was done in *Attorney-General vs. Guardian Insurance Company,* 77 *N. Y.,* 272, 277. And in respect to the pendency of the Virginia Federal suit, if pleaded as it ought to have been in the Richmond suit, the replication might have been that the Richmond suit was prosecuted by leave granted in the Federal suit, or, (which was the actual fact,) that the Federal suit had been dismissed. In fine, the decree in the Richmond suit concluded not only all matters which were actually in controversy in that suit, but any defences which might properly have been pleaded, but were not pleaded, in that suit, and certainly no such defences can now be pleaded in this collateral action. 6 *Rob. Pr.,* 431, *et seq.,* and cases cited.

*Thomas W. Hall,* and *I. Nevett Steele,* for the appellees.

The plaintiff sues by virtue of his appointment by the decree of the Virginia Court as a substituted trustee in the place of the trustees named in the company's deed of trust of 20th of September, 1866. He sues to recover from the defendants the amount of the assessment of thirty dollars per share made upon "the stock and stockholders" by the decree of the Virginia Court; in other words, he sues *by virtue of, and to enforce, said decree.* The validity of this decree, and the jurisdiction of the Virginia Court to pass said decree, may be inquired into. *Thompson vs. Whitman,* 18 *Wall.,* 451–7, 464–5, 8–9; *Pennoyer vs. Neff,* 95 *U. S.,* 721.

Jurisdiction over the *parties* as well as the *subject-matter* is essential to the validity of the decree, as against the appellees. *D'Arcy vs. Ketchum*, 11 *How.*, 165; *Webster vs. Reid*, 11 *How.*, 237; *Pennoyer vs. Neff*, 95 *U. S.*, 714.

The proceeding in the Virginia Court in which the decree was rendered, was a *creditors' bill* filed after the National Express and Transportation Company had suspended business and made an assignment, for the purpose of reaching the unpaid subscriptions of the stockholders, and in order that said unpaid subscriptions might be applied to the payment of the claims of creditors.

It is not pretended that any statutory or individual liability at law existed on the part of the stockholders for the debts of the company.

The proceeding was founded upon the principle that, in the absence of any such statutory liability, when a corporation *becomes insolvent and ceases to do business*, equity will treat the unpaid subscriptions of the stockholders as a trust-fund, to be administered for the benefit of the creditors and applied to the payment of their claims.

This doctrine takes its root in equity, and is to be applied in accordance with equitable principles and forms of procedure. Historically, it has its origin in the chancery case, decided in the reign of Charles II, of *Salmon vs. The Hamborough Co.*, 1 *Cas. in Chy.*, 204, accepted and recognized in this State, in *Matthews vs. Albert*, 24 *Md.*, 527, 538; *Fiery vs. Emmert*, 36 *Md.*, 474; *Brant vs. Ehlen, et al.*, 59 *Md.*, 1, and also generally in the Courts of England and of this country. *Thompson on Liability of Stockholders, pt.* 1, *ch.* 1; *pt.* 4, *ch.* 19.

In accordance with the equitable origin of the doctrine, the fundamental principle of equity being equality (*æquitas æqualitas*) the general rule is that, for the purpose of subjecting the unpaid subscriptions of the stockholders

of an insolvent corporation, to the payment of the debts of the corporation.

1. All creditors should join, (or that one or more should sue for the benefit of all,) in a creditors' bill, or proceeding in the nature thereof.

2. And that all the stockholders should be made defendants, so far as practicable; or, if any are not joined, that some good reason should be assigned for not joining them. *Pollard vs. Bailey,* 20 *Wall.,* 520–6, 7; *Mill vs. Scott,* 99 *U. S.,* 29; *Adler vs. Milwaukee Brick Co.,* 13 *Wis.,* 57, 60, 61–3; *Coleman vs. White,* 14 *Wis.,* 700–2; *Mann vs. Pentz,* 3 *N. Y.,* (*Comst.,*) 515–22; *Umsted vs. Buskirk,* 17 *Ohio St.,* 113–118; *Thompson on Liabilities of Stockholders, sections* 353–361.

If stockholders are not made parties in a creditors' suit to compel application of unpaid subscriptions to payment of corporate debts, equity will either refuse to decree, or will decree only against those stockholders who are made parties. *Erickson vs. Nesmith,* 46 *N. H.,* 371; *Godfrey vs. Terry,* 97 *U. S.,* 171; *Hadley vs. Russell,* 40 *N. H.,* 109; *Vose vs. Grant,* 15 *Mass.,* 505; *Briggs vs. Penniman,* 8 *Cow.,* 387; *Chandler vs. Brown,* 77 *Ill.,* 333; *Same vs. Dore,* 84 *Ill.,* 275; *Chestnut vs. Pennell,* 92 *Ill.,* 55; *Lamar Ins. Co. vs. Hildreth,* 55 *Iowa,* 248; *Henry vs. Vermillion R. R.,* 17 *Ohio,* 187; *Ward vs. Griswoldville Manuf. Co.,* 16 *Conn.,* 593; *Wood vs. Dummer,* 3 *Mass.,* 308, 315, 322; *Ogilvie vs. Knox Ins. Co.,* 22 *How.,* 380, 391; *Hatch vs. Dana,* 101 *U. S.,* 210.

Hence, the first fatal defect in the proceedings of the Virginia Court, apparent upon the face of the declaration, and relied upon in defendants' *eighth* and *ninth* pleas, admitted to be true by the plaintiff's demurrer, is that *neither the defendants nor any other stockholders were made parties* to the suit in the Virginia Court, in which the decree was rendered. No valid excuse is assigned for not joining the stockholders. Neither the original nor sup-

plemental bill assigns any reason for not making them parties. The purely *ex parte* character of the proceedings shows that they were purposely omitted. It is no excuse to say that they were represented by the company. The company could not even represent itself. When process first issued against the company in the Virginia Court, August 4, 1879, *thirteen years* had elapsed since the company ceased to do business, and had assigned all of its property for the benefit of its creditors. During the whole interval its corporate functions had been suspended by the decree of the United States Court in Virginia, placing it in the hands of a receiver. It neither answered, appeared by counsel nor made defence. The real parties interested were the stockholders, who had the ability to defend themselves, and who were not made parties. *They* were the only parties to be affected pecuniarily by the Court's decree, and they were left out of the litigation. Very few of the debts, amounting with accrued interest, as allowed by the Court to *over half a million of dollars,* which they are required by the Court's decree to pay, were ever reduced to judgment against the company, during the period of its active existence. They were either judgments obtained by default after the company had suspended, or were simple contract debts, which had never even been sued upon. The only parties interested in the audit of these claims were the stockholders, and they were not allowed to be heard. A stronger case for the application of the equitable rule requiring the stockholders to be made parties, or one affording less justification for a departure from the rule, could not possibly be presented. As to who are *necessary parties* in general, see *Bank vs. Seaton,* 1 *Peters,* 305 ; *Shields vs. Barroll,* 17 *How.,* 139 ; *Story's Equity Pleadings, secs.* 429, 430, 431.

The pleadings do not disclose any sufficient right or title in the appellant, Glenn, to enable him to maintain the present action *in his own name.* He sues *as trustee*

*by substitution and appointment* of the Virginia Court, in the place of the trustees named in the deed of trust of 20th of September, 1866. To entitle the assignee of *a chose in action* in this State to sue in his own name, an assignment in writing is requisite. *Art.* 9, *sec.* 1, *of the Code (Act of* 1829, *ch.* 51;) *Flack vs. Ins. Co.,* 3 *Md.,* 341 ; a substituted trustee is such an assignee ; *Briggs vs. Merrill,* 58 *Barb.,* 399 ; and, therefore, requires, according to the settled English practice, a formal conveyance or assignment to be made to him. *Hill on Trustees,* 298, 308.

For the general rule that a trustee substituted by order of Court, cannot sue in his own name, any more than can a receiver, see *Hill on Trustees,* 669 ; *Durant vs. Guerand,* 1 *Spear, (Law,)* 242 ; *Ingersoll vs. Cooper,* 5 *Blackf.,* 426 ; *High on Receivers, sec.* 209, *and note.*

Limitations are pleaded both with respect to the claims against the company for the payment of which the appellees are decreed to pay an assessment of thirty dollars per share on their stock, and with respect to the cause of action alleged by the appellant, viz., the appellees' liability on their stock subscription.

Had the stockholders been made parties to the Virginia suit, the defence of limitations could have been taken by them—*laches* could have been successfully pleaded by them—in regard to a large portion of the claims decreed to be paid ; claims on which the creditors had slept for thirteen and fourteen years, and for which, swollen with arrears of interest, they obtain a judgment in December, 1880, against the company, which suspended business in September, 1866. The decree itself is obtained by default, and the claims are allowed in a proceeding conducted *ex parte,* without any proof or evidence that appears upon the record. The stockholders deprived of the opportunity of pleading limitations to these stale claims in the Virginia Court, are not the less entitled on that account to make the same defence when sued at law for the enforcement of the same claims here.

The unpaid subscriptions of the stockholders became a debt due and demandable, and capable of being enforced by the creditors in equity, just as soon as the corporation became insolvent, suspended business, and ceased to be a "living, going corporation," according to the language of the cases. *Eo instanti* the right of action of the creditors —their right to have recourse to a Court of equity to reach this "trust fund," accrued, and by parity of reasoning, from the same moment limitations began to run.

If it was obligatory upon the stockholders who had not paid their subscriptions in full, to respond to the just demands of the creditors, it was equally obligatory upon the creditors to lose no time in asserting their demands. The liability of the stockholder is after all nothing more than a debt, and there is no reason why the principle and rule of limitations should not apply as well to the collection of such a debt, as to any other form of simple contract indebtedness. So long as the company continued to live and carry on business, the obligation of the stockholder to pay, according to the terms of his subscription, arose the moment a call was made by the board of directors. When the company became insolvent and stopped business, the obligation to pay existed in favor of creditors, without any formal call by the directors. It was an obligation such as the creditors could at once enforce in a Court of equity. In their favor all necessity for a call was dispensed with.

The Virginia suit against the company was not even begun until 28th of November, 1871—*five years* after the company ceased business, and after the deed of trust of the 20th of September, 1866, became operative, and process was not sued out against the company until the 4th of August, 1879—nearly *eight years* afterward.

The stockholders were not sued at all in Virginia, and the present action against the appellees, based upon their subscription, was instituted the 9th of April, 1881. That the plea of three years' limitations, as pleaded in the de-

Glenn, Trustee *vs.* Williams.

fendants' *seventh* plea, is a complete bar to the present suit, see *Terry vs. Tubman*, 92 *U. S.*, 156; *Hatch vs. Dana*, 101 *U. S.*, 215; *Scovill vs. Shaw*, 4 *Cliff.*, 549–567; *Payne vs. Bullard*, 23 *Miss.*, 88; *Curry vs. Woodward*, 53 *Ala.*, 376; *Thompson on Stockholders*, 282, 283; *Foreman vs. Bigelow*, 4 *Cliff.*, 548; *Terry vs. Anderson*, 95 *U. S.*, 628; *Carroll vs. Green*, 92 *U. S.* 509; *Henry vs. R. R. Co.*, 17 *Ohio*, 187; *Pittsburg & C. R. R. vs. Byers*, 32 *Penna. St.*, 22; *Baker vs. Atlas Bk.*, 9 *Metc.*, 182.

ALVEY, J., delivered the opinion of the Court.

This was an action brought by the plaintiff as trustee against the defendants to recover of them a certain per cent. of the unpaid subscription to the capital stock of the National Express and Transportation Company, a corporation chartered and organized under the law of the State of Virginia. The corporation was organized in 1866, under a charter granted by the Legislature of Virginia in 1865, subject to the general laws of that State, relating to corporations or joint stock companies. And among the provisions of such general laws upon the subject, there is one which declares that upon every subscription for shares in any joint stock company there shall be paid upon each share two dollars at the time of subscribing, and the residue thereof *as required by the president and directors;* and if any money which any stockholder has to pay upon his shares be not paid as required by the president and directors, the same, with interest thereon, may be recovered by warrant or action, according to amount, &c.

The authorized capital stock of the company was $5,000,000, (with the privilege of increasing it to $10,000,000,) divided into shares of $100 each, on which two dollars per share were payable at the time of subscription, and the balance as called for by the president and directors. Of this capital stock 40,044 shares were subscribed, and the defendants, as it is alleged, became sub-

scribers for one hundred shares.   On the stock subscribed calls or assessments were made to the extent of about 20 per cent.; but a considerable proportion of the calls was never realized.   Much the larger portion of the subscribers to the stock resided in other States, and at great distance from the principal office of the corporation, and, as we may suppose, the collection of assessments upon the stock was attended with no little difficulty.   The company soon became embarrassed and determined to suspend its operations; and on the 20th of September, 1866, under and by virtue of an order and resolution of the board of directors, the president of the company executed a deed of trust to three trustees for the benefit of the creditors of the company.   That deed or assignment conveyed all the property of the corporation, including  the balance unpaid on subscriptions to the stock.   The validity of the deed was a subject of litigation, and was before this Court in the case of the *Balt. & Ohio R. R. Co. vs. Glenn*, 28 *Md.*, 287, and was then pronounced  valid, according to the laws of Virginia, where it was made.   It has also been pronounced valid by a Court of competent jurisdiction in the State of Virginia.

In December, 1871, a creditors' bill was filed in the Chancery Court of the City of Richmond, in the State of Virginia, where the corporation was located and had its principal office, against the corporation, and certain of its officers, and against the trustees named in the deed of assignment; and to which bill an amendment and supplement were filed in August, 1879, praying that the trustees named in the deed of assignment be removed, and others appointed in their place ; that an assessment on the unpaid capital stock be made ; that the debts of the corporation be ascertained and paid; and for general relief. Upon this bill and amendment such proceedings were had as resulted in a decree of the Court, whereby the original trustees in the deed were, upon their own request, dis-

placed, and the plaintiff appointed in their stead; an account of the debts due from the corporation taken and adjudged to be paid, and an assessment of 30 per cent. on the unpaid subscriptions to the capital stock made, with authority and direction to the plaintiff, as trustee, to proceed, by suit or otherwise, and in such jurisdictions, as he might be advised, to collect such assessment. It is by virtue of the power and authority thus conferred upon him that the plaintiff has brought the present action.

The case is presented on demurrers to pleading exclusively. The parties by their counsel have agreed that the Court shall refer to the record of the Chancery Court of the City of Richmond, in the case of Glenn's administrator and others against the National Express and Transportation Company and others, (the creditors' suit already referred to,) as if the same had been fully set out in the declaration, and that the printed copy of such record of said cause may be used in this Court, without being copied into the record in this cause. The object of this is, as we understand it, to place before the Court all the facts relevant to the case as fully as they could have been alleged in the declaration; and any facts disclosed by that record which may be material to the questions raised on the pleadings, are to be regarded as set out in the declaration. It is only in that way that we can regard such an agreement in deciding questions on demurrer.

The declaration, as amended, contains but a single count, in which are alleged briefly the facts supposed to be sufficient to constitute a right of action against the defendants. The latter pleaded by way of defence eleven pleas, and all of them, except the first and fourth, have been demurred to by the plaintiff. The Court below gave judgment on the demurrers for the defendants, and the appeal is taken from that judgment. The issues of fact were not tried, and are therefore not before us.

The demurrers mount up to and challenge the sufficiency of the declaration, as well as the pleas to which they were

interposed.   We are required, therefore, to determine the questions that arise upon the whole pleadings before us, the declaration included.   And the questions thus raised are:—

1st.  Whether the Chancery Court of the City of Richmond obtained jurisdiction over the case referred to against the National Express and Transportation Company, and others, by proper process, to justify that Court to render the decree referred to in the declaration?  If so,

2nd.  Whether that Court had power and jurisdiction, under the circumstances of the case, to make assessments, or to direct assessments to be made, upon the unpaid subscriptions to the capital stock of the corporation, with which to pay the debts of the company; and whether any decree making or directing assessments upon the capital stock for such purpose, can bind or affect the stockholders who were not, in their individual capacities, parties to the cause?

3rd.  Whether there was power and jurisdiction in that Court to remove the trustees appointed by the corporation, by its deed of assignment, and to appoint a new one in their stead, and to invest such new or substituted trustee with the rights and powers possessed by those removed, including the right to sue in his own name as trustee?

4th.  Whether it be competent to the defendants in this action, and as a bar thereto, to plead and rely upon the Statute of Limitations of this State, to the various debts due from the corporation, and which have been found to be owing, and adjudged to be paid, by the decree of the Chancery Court of the City of Richmond, and for the payment of which the assessment upon the unpaid subscriptions to the capital stock was ordered?

5th.  If the present action be properly brought and by the proper party, whether the Statute of Limitations forms a bar to the right to recover?

6th.  Whether the institution and pendency of other suits in equity, not by the plaintiff, but by other parties,

and in several respects for different purposes, can form any legal bar to the recovery in this action?

The determination of these questions would seem to embrace the whole controversy as presented by the pleadings before us; and we shall consider the questions in the order we have stated them.

1. It is always competent to parties sought to be bound or affected by a judgment or decree, of any regularly organized Court, professing to have jurisdiction, whether of our own or a sister State, to allege and show that such judgment or decree was rendered without competent jurisdiction. It is not, however, to be assumed that there was want of jurisdiction. The presumption is the other way; and the party seeking to avoid the effect of the judgment or decree must allege and show affirmatively, that it was rendered without jurisdiction, whether that want of power be in defect of process or otherwise. It is alleged in the declaration in this case that the Virginia Court was one of competent jurisdiction; but irrespective of that allegation, there is no intendment against the validity of the decree for want of jurisdiction in the Court that rendered it; for the comity and respect which are justly due from one State to another, would forbid the Courts of this State to presume that the tribunal which pronounced the decree had transcended its jurisdiction. This is abundantly shown by the cases cited and reviewed in the case of the *Bank U. S. vs. Merchants' Bank of Baltimore*, 7 *Gill*, 429, 431.

It appears by the record made a part of the pleadings in this case, that the corporation failed to appear in its corporate capacity to the suit, and the original and amended and supplemental bills were taken as confessed against it; but it appears that it was served with process by service on two of its directors, in their official capacities and as representatives of the corporate body, and one of them appeared and answered, though not for the cor-

poration; and that another of the officers, the cashier of the company, Mr. Porteaux, was served with process as a representative of the company, and that he appeared and answered. This would appear to be sufficient not only to notify the company of the pendency of the action against it, but to bind it by the decree that was subsequently passed in the cause. *U. S. Ins. Co. vs. Shriver*, 3 *Md. Ch. Dec.*, 381; *Boyd vs. Ches. & Ohio Canal Co.*, 17 *Md.*, 195. The surviving trustees in the deed of assignment appeared to the cause, and, by their answers, desired to be relieved of the trust. And it was because the other parties, defendants in the proceeding, were non-residents that they were not served with process.

A decree passed upon such service of process cannot be pronounced void for want of jurisdiction of the parties so served and warned. If they failed to appear in Court to make defence it was their own fault and disregard of the process of the Court; and the Court was fully justified in proceeding in their absence. It must be recollected that this Court cannot sit in review of the decree of the Virginia Court, for the correction of errors or irregularities that may have been committed in the exercise of a competent jurisdiction. If there be such errors or irregularities in the proceedings, they could, possibly, have been the subject of a direct appeal from the decree; but they cannot be allowed to affect the validity of the decree in a collateral proceeding like the present. *Pennoyer vs. Neff*, 95 *U. S.*, 714. The Constitution of the United States requires that "full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State;" and the Act of Congress providing for the mode of authenticating such acts, records, and judicial proceedings, declares that, when authenticated as provided, "they shall have such faith and credit given to them in every Court within the United States as they have by the law or usage in the Courts of the State from

which they are or shall be taken." If, therefore, the decree be such that it would be enforced in Virginia, it must, in such case as the present, have the same faith and credit allowed to it in the Courts of this State. *Caldwell vs. Carrington's Heirs*, 9 *Pet.*, 86. It is not pretended that it is not such a decree as would be respected and enforced by the Courts of Virginia; and it is well settled that a decree of a Court of equity, of competent jurisdiction, is equally binding, and equally within the constitutional provision, as a judgment of a Court of law. *Pennington vs. Gibson*, 16 *How.*, 65; *Christmas vs. Russell*, 5 *Wall.*, 290; *Williams vs. Preston*, 3 *J. J. Marshall*, 603. We can entertain no doubt, therefore, that the Court acquired jurisdiction of the cause as against the corporation and the trustees, and that the decree as against those parties must be allowed full faith and credit in the Courts of this State.

2. The second question is one that was much discussed at bar, but we do not perceive that it presents any very great difficulty in view of the facts disclosed. The corporation suspended all active operations, and was supposed to be insolvent. Its tangible property was of uncertain value, and was dispersed over the country, and consequently liable to great loss. Large debts had been contracted, with but small amount of assets in hand with which to pay them; and the only real reliable fund for the payment of the debts was the unpaid subscriptions to the capital stock of the company. In the deed of assignment for the benefit of the creditors, such unpaid subscriptions were expressly assigned to constitute a part of the trust fund with which to pay the debts; but the corporation could not, and did not attempt to, assign the discretionary power vested by law in the president and directors, as to the time and amount of the calls, in respect to the balance of the unpaid subscriptions of stock. That power was still left with the president and directors. The corpora-

tion was not dissolved; it had only suspended active operations; and the president and directors, by the terms of the charter, continued in office until their successors were chosen, with power to fill vacancies, as prescribed by the by-laws. They made no assessment upon the unpaid subscriptions, and, in that respect, either neglected or refused to do their duty towards the creditors, and left the trustees without the means of realizing the trust funds to fulfil the objects of the trust confided to them. In such state of case, both the trustees and the creditors were powerless, without the assistance of a Court of equity. Under such circumstances what was to be done? Was the trust to fail, and the creditors to go unpaid, simply because the board of directors, or the trustees under the deed, thought proper to be inactive and neglectful of their duties? Justice would be very imperfectly administered indeed, if such a case was without an adequate remedy at the instance of the creditors. The law has provided a remedy, and one that was plain and adequate. It was the right of any creditor of the corporation, interested in the administration of the trust, to apply to a Court of equity for relief; and the fact that, to obtain relief, it was necessary to take an account of the debts due from the corporation, and to do what the president and directors of the company ought to have done, make an assessment upon the unpaid subscriptions of stock, to raise funds with which to pay the debts, could form no substantial reason, in the view of a Court of equity, for refusing relief. It was but the exercise of the ordinary powers of a Court of chancery for the execution of trusts, embarrassed with difficulties and impediments that could not be readily overcome without the assistance of the Court. Such proceeding was strictly analogous, indeed similar, to that adopted in many other cases for the accomplishment of the same objects; and the precedents are not confined to recent times. *Dr. Salmon vs. The Hamborough Company*, 1

*Cas. in Ch.*, 204; *Hall vs. U. S. Ins. Co.*, 5 *Gill*, 484; *Ward vs. Griswoldville Man. Co.*, 16 *Conn.*, 598; *Sanger vs. Upton, Assignee*, 91 *U. S.*, 56; *Scovill vs. Thayer*, 105 *U. S.*, 155.

But it is said, and contended for with zeal, that the Virginia decree, in determining and making the assessment upon the stock held by stockholders, for the payment of debts, is without any validity or effect whatever, as against the stockholders, because they, in their individual capacities, were not parties to the proceeding, and had no opportunity to defend against the establishment by the decree of the large amount of debts against the corporation. This objection to the decree is distinctly raised by the defendant's eighth and ninth pleas. The argument in support of the defence thus set up is plausible, but we do not think it sound.

When the Court obtained jurisdiction of the corporation, every stockholder, in his corporate capacity, was a party to the cause, and was supposed to be represented by the president and directors, who were intrusted with the management of the corporate interest of all the stockholders. If they neglected their duty, in allowing claims to be established against the corporation that ought to have been defeated, the stockholders must have themselves to blame for not having a more active and efficient board of directors. But we cannot assume that there has been any injury done in that respect. If the decree were held to be totally without effect as against the stockholders, because they were not parties to it in their individual capacities, the consequence would be that the creditors would be without adequate remedy. It is apparent, indeed conceded, that the stockholders are distributed among several States, and but a comparatively small number of them reside in Virginia. No ordinary process from the Courts of that State could reach the non-residents, and in a proceeding where the defendants are

sought to be bound or affected by a judgment or decree *in personam,* no constructive notice by publication, or actual service of process beyond the State, will have any effect to give the Court jurisdiction over the party. *Pennoyer vs. Neff,* 95 *U. S.,* 714. If, therefore, the stockholders were necessary parties in such a proceeding, the creditors would be without any adequate redress as against the stockholders, or, at best the remedy would be very imperfect and difficult to pursue.

But are the stockholders in their individual capacities necessary parties to such a proceeding? It is very clear that in any ordinary action or suit against the corporation to establish and recover a debt, the stockholders are not proper parties, except as they are represented by the corporation; and if they, in their separate capacities, are allowed to intervene at all, it can only be through and in the name of the corporation. And yet the judgment recovered against the corporation binds the stockholders, unless they can show that it was procured by fraud or collusion. *Weber vs. Fickey,* 47 *Md.,* 196; *Thayer vs. New England Printing Co.,* 108 *Mass.,* 523; *Milliken vs. Whitehouse,* 49 *Me.,* 527; *Ang. & Am. on Corp.,* sec. 615. The judgment is conclusive as against the corporation and its property (*Railroad Co. vs. Howard,* 7 *Wall.,* 392, 410 to 413,) and, upon principle, those who hold its property or funds for the payment of debts, ought to be concluded, except where there has been fraud or collusion. The unpaid subscriptions to the capital stock are the proper assets of the corporation, and constitute a trust fund for the payment of its debts; and as against a creditor with an established debt against the corporation, by judgment or decree, the stockholder has no right to withhold the funds of the company upon the ground that he was not individually a party to the proceedings in which the recovery was obtained.

But the question of the right and power of a Court of equity, to order or decree assessments or calls upon the

unpaid subscriptions to stock, for the purpose of paying the corporate debts, without having the individual stockholders before it as parties to the proceeding, has been settled in the most authoritative way.

The case of *Hall vs. U. S. Ins. Co.*, 5 *Gill*, 484, was an action at law, like the present, to recover of a stockholder an assessment or call made upon the unpaid subscription to capital stock of the corporation, by the order and direction of a Court of equity, in a proceeding to which the stockholders, in their individual capacities, were not parties; and yet a recovery was had, notwithstanding the case was defended upon the ground that the stockholder was not bound by the order of the Court to which he was not a party. The question was distinctly raised, upon the admissibility in evidence of the equity proceeding in which the order directing the call had been passed. The objection taken to the admissibility of the proceeding was, that the defendant was not a party to the cause in equity, nor to any of the proceedings therein; but the Court below overruled the objection, and the Court of Appeals fully sustained that ruling. The Court of Appeals said, "The Court's order for the institution and prosecution of this suit was definite and final. As to the power exerted by Baltimore County Court, sitting in equity, in the proceedings before it, it is believed no well founded exception can be taken. It was indispensably necessary for the prevention of fraud; and to do justice to persons whose grievances were undeniable and incapable of relief anywhere else, or in any other way, than in that pursued by the County Court. In such a case, and under such circumstances, it cannot be necessary to cite authorities to establish the propriety of the exercise of such a power;" and then declared that there was no error committed by the Court below in overruling the objection taken by the defendant.

The case of *Sanger vs. Upton, Assignee*, 91 *U. S.*, 56, was where the corporation was adjudged a bankrupt, and

an assignee was appointed, and an order was made that the balance unpaid upon the capital stock held by the several stockholders should be paid to him by a certain time, and in default he should proceed to collect the same. The defendant, in that case, having made default, an action at law was brought against her by the assignee to recover the balance due on her stock; and it was held by the Supreme Court, that the order was conclusive as to the right of the assignee to bring and maintain the action: That the bankrupt Court had jurisdiction and authority to make the order; and that it was not necessary that the stockholders should have received actual notice of the application: That, in contemplation of law, they were before the Court in all the proceedings touching the corporation of which they were members. And this decision was made not in pursuance of any express provision of the bankrupt law, but in analogy to the powers and procedure of a Court of equity, and to meet the requirements and justice of the case.

In the opinion of the Court it is said, "It was not necessary that the stockholders should be before the Court when it (the order) was made, any more than that they should have been there when the decree of bankruptcy was pronounced. That decree gave the jurisdiction and authority to make the order. The plaintiff in error could not, in this action, question the validity of the decree; and, for the same reasons, she could not draw into question the validity of the order. She could not be heard to question either, except by a separate and direct proceeding had for that purpose." And the Court cite and approve the cases decided in chancery, and among them the case of *Hall vs. U. S. Ins. Co.*, 5 *Gill*, 484.

Both upon principle and authority, therefore, we conclude that the defendants cannot successfully defend this action, upon the ground, that they were not, in their individual capacities, parties to the decree that made the assessment and authorised the bringing of the action.

3. Whether the equity Court in Virginia had power and jurisdiction to remove the trustees appointed by the corporation, and to appoint a new trustee in their place, would seem to be too clear for question. It has long since been settled, that Courts of equity, by virtue of their general chancery powers, have jurisdiction to accept the resignation of trustees, or to remove them for cause, and to appoint new trustees in their stead, to execute the trust. And it is equally well settled, that if the Court have jurisdiction of the subject-matter, mere irregularities in the proceedings, or in the appointment, will not vitiate the order, nor can the regularity of the proceedings or of the appointment be inquired into in a collateral suit. *Powles vs. Dilley,* 9 *Gill,* 222; 1 *Perry on Trusts,* 275. But the real point of the objection here is, as we understand it, that the new trustee did not take by the simple appointment, and by virtue of the decree, the right and power to institute this suit in his own name as trustee ; that there should have been an assignment from the former trustees. In this, however, we do not agree.

The decree appointing the plaintiff, in express terms, clothes and invests him " with all the rights and powers," and charges him " with all the duties of executing the trusts of said deed, to the same effect as were the original trustees therein." And as to all *choses* and rights of action, pertaining to the trust, this provision of the decree passed the right thereto to the new trustee as fully as the original trustees held it. He needed no formal assignment thereof from the original trustees; the decree itself operated as an assignment. If those trustees had been beyond the jurisdiction, or had fled the country, it would have been monstrous to contend that the trust should fail because a formal assignment from them to a successor in office could not be obtained. It was competent to a Court of equity to invest the new trustee with all the rights and powers held by the former trustees in respect to the per-

sonal assets assigned by the deed; and in this case the plaintiff, by the decree, is specially "authorised and directed to collect and receive the said call and assessment, and to take such prompt steps to that end, by suit or otherwise, and in such jurisdictions, as he may be advised." We are of opinion, therefore, that the plaintiff was not only legally appointed, but that he was fully invested with right and power to bring and maintain this action in his own name as trustee.

4. The next question arises on the fifth and sixth pleas of the defendants. By these pleas the Statute of Limitations of this State is pleaded to all the debts decreed to be due and owing from the corporation, as a bar to this action.

Upon what principle these pleas are supposed to be maintainable it is difficult to determine. It must be recollected, this is not an action brought by those creditors, or any of them, to recover their claims of the defendants; but it is an action by the trustee, exercising and asserting rights that belonged to, and which have been derived from, the corporation itself. And such being the case, we suppose it to be clear that in an action by the corporation to recover of one of its stockholders an assessment upon unpaid stock held by him, the latter could not defeat the action, by pleading that the debts due from the corporation, and for the payment of which the call was made, were subject to the bar of the Statute of Limitations. And if such a defence could not be availed of in an action by the corporation, there is no reason or principle that would allow it in an action by its assignee when prosecuting the same right instead of the corporation. The creditors of the corporation are not parties to this suit to vindicate their claims, or to be bound by any judgment that might be rendered in respect to the defence pleaded. It is a matter wholly collateral and forms no part of the subject-matter of the suit. It was with the corporation to

Glenn, Trustee *vs.* Williams.

determine, when the claims against it were presented for adjudication in the Virginia Court, whether the Statute of Limitations should be resorted to as a defence or not, and if the corporation has failed to avail itself of such defence at the proper time and in the proper forum, it cannot be set up in the Courts of this State, in actions against stockholders for the recovery of the proper assets of the corporation, and where the existence and validity of the debts against the corporation are not involved.   Apart from the record and decree of the Virginia Court introduced as part of the pleadings in this cause, the creditors not being parties, neither the Court below nor this Court could have any means of knowing who are creditors, or who are not; nor have they any means of knowing what debts or claims would be subject to the bar of the Statute ; and certainly those questions ought not to be tried and determined in the absence of the creditors concerned.   We have before us, as part of the pleadings in the cause, the record and decree of the Virginia Court, and by that we find a great number and a very large amount of debts adjudicated against the corporation.   That decree appears to stand unreversed, and as the Court had jurisdiction of the parties and the subject-matter before it, the Courts in this State would not be at liberty to go behind that decree to determine what claims against the corporation ought to have been allowed, and what claims were subject to the bar of the Statute of Limitations or other defences, and ought, therefore, to have been rejected.   If there has been fraud or collusion in the establishment of these debts, or any of them, against the corporation, to the wrong and injury of the stockholders, the latter may obtain relief by suitable application; but that can only be to a Court of equity, and not by way of defence to an action at law for the recovery of an assessment upon the capital stock. The fifth and sixth pleas, therefore, formed no bar to the action.

Glenn, Trustee *vs.* Williams.

5. The next question is as to the application of the Statute of Limitations to the cause of action sued on in this case. This defence is pleaded as a bar to the action by the seventh plea of the defendants.

As we have already seen, by the statute of Virginia, in force at the time of the organization of the company, and still in force, the subscriber to stock was required to pay two dollars on each share subscribed for, "*and the residue thereof as required by the president and directors;*" and any amount not paid as required by the president and directors, to be recovered by action, &c.

All subscriptions to the stock of this corporation had reference to that provision of the statute, and the conditions or requirements there prescribed formed terms in the contract of subscription. After the payment of the two dollars per share, there was nothing due from the subscriber to stock until an authorised call was made for the residue. The contract contemplated the exercise of judgment and discretion on the part of the president and directors as to the times and amounts of future payments on the stock, and there was nothing due from the stockholder until such amounts were determined on, and regularly called for. Until a regular call made, there was no unconditional liability on the part of the stockholder to pay. Until then he could not know when to pay, or how much he would be required to pay. The subscription, therefore, was conditional, as to the times and amounts of payment; and, consequently, there was no fixed obligation of the stockholder to pay, and no right of action against him, until an assessment and call made, either by the president and directors, or by the order of a Court of competent jurisdiction. It is for the amount of the assessment made that the right of action accrues, and not for the whole balance of the unpaid subscription, unless the whole amount be called for ; and it is only from the time of the assessment and call made that the Statute

runs in favor of the defendant. This is the settled doctrine upon the subject, and it has been fully recognized and approved in this Court. *Balto. & H. Turnpike Co. vs. Barnes*, 6 *H. & J.*, 57; *Salisbury vs. Black's Adm'r*, *Ib.*, 293; *Taggart vs. West. Md. R. Co.*, 24 *Md.*, 563; *West. R. Co. vs. Avey*, 64 *N. C.*, 491; *Pittsburg & Connellsville R. Co. vs. Plummer*, 37 *Penn. St.*, 413.

In the case of *Sinkler vs. Turnpike Road Co.*, 3 *Penn. St.*, 149, by the terms of the subscription, the money therefor was payable "in such manner, at such times, and in such proportions as should be determined by the president and managers," and it was held by the Supreme Court of Pennsylvania that the Statute did not begin to run thereon until after such determination, and demand made in pursuance thereof. And in the recent case of *Scovill vs. Thayer*, 105 *U. S.*, 143, the subject is very fully considered, and the same doctrine maintained and applied. In that case it was said by the Court, "It is well that when stock is subscribed to be paid upon call of the company, and the company refuses or neglects to make the call, a Court of equity may itself make the call, if the interest of the creditors require it. The Court will do what it is the duty of the company to do. But under such circumstances, before there is any obligation upon the stockholder to pay without an assessment and call by the company, there must be some order of a Court of competent jurisdiction, or, at the very least, some authorised demand upon him for payment. And it is clear the Statute of Limitations does not begin to run in his favor until such order or demand."

Here the defendants were only bound to pay upon a general assessment made upon all the stock subscribed, and only for the purpose of paying off the liabilities of the corporation. Until it was ascertained what amount, and what proportion of the unpaid subscriptions, would be required to discharge those liabilities, no assessment could

be made; and until then his obligation to pay, as to time and amount, was not fixed and determinate. It was only from the time of the assessment made by the decree of the Court in Virginia that the Statute of Limitations began to run; and it was only from that time, or the time of demand made of the defendants for payment of the assessment, that the right of action accrued to the plaintiff as trustee. And as the time of the running of the Statute had not become a bar at the time of the institution of this suit, the seventh plea affords no answer to the action.

A long time has elapsed since the suspension of the operations of the company, but, as we gather from the pleadings in this cause, most of that time has been occupied by litigations of various sorts, and in several Courts, in respect to the assets of the Company; and that may account for much of the delay that has occurred in bringing the proceedings in the Chancery Court of Richmond to a conclusion. The decree in that case, making the assessment, was passed on the 14th of December, 1880, and this action was brought on the 9th of April, 1881.

6. The next and last question is that raised by the several pleas of former suits in equity pending, in relation to the assets of the corporation, and their administration for the benefit of creditors.

These pleas fail to disclose anything that could constitute a bar to this action. At most, the matters alleged could only operate, if at all, in abatement; and as pleas in abatement they are not valid, for they are pleaded without affidavit, and together with pleas in bar. Matters in abatement and matters in bar cannot be pleaded together; the pleas in bar supersede those in abatement. *Step. Pl.*, 430, 431; *Cruzen vs. McKaig*, 57 *Md.*, 454, 459. But those pleas could not be regarded as good even as pleas in abatement. They are not sufficiently definite in their averments, as to the parties, the particular rights and subject-matter of the suits, and the form and extent

of the relief prayed. They do not show with certainty
that the former suits were for the identical right or cause
of action sued upon in this cause, or that those proceed-
ings are being prosecuted. And as pleas in bar they are
wholly insufficient. To constitute a good bar, the matter
pleaded must, if true, afford a full and complete answer
to the action, and show that there is no right of recovery.
It is not alleged in any of these pleas that there has been
a former recovery of the money sued for; or that there has
been anything done or adjudged whereby the defendants
have been released or discharged from their obligation to
pay. That there have been several suits instituted in dif-
ferent Courts, all having for their objects the establishment
of claims against the corporation, the collection of unpaid
subscriptions to stock, and the administration of the cor-
porate assets, may all be true; but if they have resulted
in no final and conclusive decree, as to the right and
demand involved in this action, they constitute no bar.
And nothing is alleged to show that they have so resulted.
The averment in the eleventh plea, in respect to a par-
ticular judgment sought to be enforced, that it "was
adjudged and decreed to be no judgment," is wholly
inconclusive as to the existence of the claim and the
party's rights thereto. His judgment may have been
invalid for various reasons, not affecting the validity of
his claim. Process may not have been served; the Court
rendering the judgment may not have had jurisdiction,
and many other causes might exist to justify the Court in
declaring that what professed to be a judgment was not
legally entitled to be so regarded. But if it were con-
ceded that the decree was against the claim as well as
the judgment, it could make no difference in the right of
the plaintiff in this cause to recover. The assessment for
which this suit is brought is not to pay any special or par-
ticular debt or claim against the corporation; it was to
liquidate the entire indebtedness of the corporation. And

hence to allege that any particular claim is invalid and and ought not to be allowed as against the corporation, or that such claim has been adjudged against in a judicial proceeding, can form no bar to this action at law for unpaid subscriptions to stock. Relief against such improper claims must be sought elsewhere.

What may have been the effect if the pendency of these equity suits had been timely and properly pleaded in the case in the Chancery Court of Richmond, before the final decree therein was passed, we need not stop to conjecture, nor is it a matter with which we are concerned. The decree that was passed in that suit cannot be invalidated or affected in any way by the pendency of other suits in other jurisdictions, even if they were between the same parties and in regard to the same subject-matter. *Seevers vs. Clement*, 28 *Md.*, 426.

Upon the whole we are of opinion that all the pleas demurred to are bad and form no defence to the action, and that the demurrers thereto should have been sustained. We must, therefore, reverse the judgment and remand the cause for new trial.

*Judgment reversed.*