Mi\ Justice Hagner
delivered the opinion of the court.
This is one of a large number of cases instituted by the plaintiff against sundry persons, residents of this District, who, it is alleged, were subscribers to the plaintiff company.
The declaration in this case alleges that the testator of the defendant subscribed for twenty shares of the capital stock of the company, a body corporate of the State of Virginia, and undertook to pay for each share so subscribed $100, in such instalments and at such times as he might be lawfully called upon and required to pay the same ; and that, by force of that subscription, he became and was admitted a stockholder of the company ; that on the 20th day of September, 1866, the company executed and signed *455 a deed to Hoge and others, in trust, for the benefit of its creditors, of all its property, rights, credits, and effects of every kind in trust, to reduce the same to money, and to apply the proceeds to-the trusts declared in said deed.
The declaration further avers that, in a case instituted and depending in the Chancery Court of the city of Richmond, in which John W. Wright, sheriff' of the city of Richmond, and as such official, administrator of William W. Glenn, deceased, was complainant, with other persons who claimed to be creditors of the company, and the said company, and the survivors of the said trustees, and divers other persons, officers of the company, were defendants, it was, on the 14th of December, 1880, adjudged, ordered and decreed, that the plaintiff should be appointed trustee, to execute the trusts of the said deed in the room and stead of the trustees originally created thereby.
It is further alleged in the declaration, that in the said cause, the court decreed that a large amount of debts, secured by the deed of trust to the company, remained unpaid, and were entitled to be paid out of the property conveyed by the deed ; and that $80 on each share of stock subscribed never having been previously called for by the company, that amount per share remained liable to be called for by the subscribers according to their original subscription and that it was further decreed by the said Chancery Court, that 30 per cent, of the par value of each share should be called for and required to be paid by each subscriber, for the purpose of paying the debts of the company under the provision of the deed of trust; and, further, that a call and assessment was thereby made upon the stockholders of the company for the said 30 per cent., being $80 on each share to be paid and received by the plaintiff, as trustee under the said deed, in the room and stead of the original trustee.
The declaration further avers that the plaintiff accepted the appointment made by the decree, complied with its terms and conditions, and was duly qualified to act as such substituted trustee ; and that, by force of the decree, and the statute of the State of Virginia in such cases made and pro- *456 •vi'ded, in accepting such appointment as trustee, and qualifying as such as required by said decree, the said plaintiff became and was substituted to all the rights, powers, duties, and all responsibilities of the trustees named in said deed, and became and is lawfully entitled to receive and collect said assessment of $30 on each share from the persons liable to pay the same ; and that it was decreed in said chancery cause that he, as such substituted trustee, was so authorized and directed to collect and receive the same, and take such steps to that end as he should be advised.
The declaration further avers that, by virtue of the contract and of the said call and assessment so made-1 by said decree, the defendant’s testator, and the defendant herself, as the executrix, became and is liable to piay the sum of $600, with interest from December 14, 1880, being the amount of $30 for each share of stock in said company subscribed by the said testator in his lifetime ; but that the said testator and said defendant, although they were requested, failed and refused to pay the same ; and that plaintiff claims $600 with interest.
The declaration concludes with the usual money counts.
To this declaration the defendant interposes a demurrer, and the statement of the matter to be argued is as follows:
“Among the grounds of demurrer to be argued will be : “ That the said plaintiff, claiming to have been appointed trustee by decree passed in a certain cause instituted and depending in the Chancery Court in the city of Richmond, in the State of Virginia, cannot maintain the action instituted herein against said defendant, in the District of Col umbia.”
The discussion has been a very thorough and able one, and has taken much broader ground than that indicated by the defendant.
The first objection urged under the demurrer is, that the declaration is insufficient, inasmuch as it does not aver distinctly that the plaintiff had given bonds required by the decree. I do not think it was necessary to make any such formal averment in this case, any more than in cases where *457 an executor or an administrator, or other officer, acting under a bond, is the plaintiff. In such cases an averment of that kind is not requisite ; but, if it were required here, I think there is a sufficient statement in this declaration of the appointment and qualification of the plaintiff' as trustee.
Passing to more important objections, first, it is insisted that the plaintiff cannot sustain this suit, because he was appointed by the Chancery Court in Richmond ; that he is in fact to be treated as a receiver in chancery under that appointment, and as such receiver, he has no extra-territorial power ; and, therefore, cannot in this jurisdiction sustain an action.
It is clear that, so far as the words of the decree are concerned, the plaintiff was appointed a trustee and not a receiver ; and in this action he sues in his quality as trustee. In this particular this case differs widely from that of Clark and Booth, 17 Howard, 334, and of Appleby, Receiver, vs. Grahamite and Trinidad Company, decided by the General Term of this court. In those eases the party was suing as receiver, eo nomine. But in my judgment the doctrine of those cases is not applicable to the present; for this plaintiff" cannot properly be regarded as a receiver within the meaning of those rulings.
It is evident that a receiver is treated in the chancery authorities as an officer of special and very limited jurisdicdiction and authority. He is first noticed in the books as a. bailiff, receiver or manager; and jurisdiction -was assumed in those cases in aid of the common law actions against them because of difficulties attending and preventing a complete recovery against them. See Story’s Equity, sec. 446. In that section Judge Story says :
“ A receiver at common law was one who received money to the use of another, to render an account; and upon his account he was not allowed his expenses or charges, except in cases of merchant receivers.” '
The courts of chancery subsequently commenced to appoint officers with this title; but it clearly appears that a receiver was a mere creature of the court, in no respect a *458 •contract agent in whose appointment the parties were necessarily consulted, and that his authority was of the most limited description. In the w'ords of the authorities, it is a provisional power only—
“ The mere speedy getting in of a party’s estate, and securing it for the benefit of such person as shall appear to be entitled; and it does not at all affect the right.”
In the words of the Supreme Court, in the case of Clark and Booth:
“ A receiver is an indifferent person between parties, appointed by the court to receive the rents, issues or profits of land, or other thing in question in this court, pending the suit, where it does not seem reasonable to the court that either party should do it. He is an officer of the court; his .appointment is provisional. He is appointed in behalf of all parties, and not of the complainant or defendant only. He is appointed for the benefit of all parties who may establish rights in the cause.”
A receiver is a mere creature of the court—never a con-bract agent; he has no authority to sue, even in the jurisdiction where be is appointed, except by the leave of the court. He has no title to the property which he is directed to conserve, and his actions in respect of it are of the most limited description, and can be taken only after an application and authority particularly given in each instance by the court. In the language of Judge Story, in section 833 (a):
“His possession is the possession of the court; and it will not permit itself to be a suitor in a court of law.”
These principles are not applicable to the case of trustees appointed by the convention of parties, or by the authority of the court. Such officers undoubtedly have the authority to sue without a previous authorization. In fact, the rulings of the courts denying the power to a receiver to sue extra-territorially, are exceptional, and do not apply either to trustees or to other similar officers. Iu Judge Story’s Conlict of Laws, section 420, note 4, the author in discussing the power of assignees of a bankrupt to sue in a foreign country, states the following as his conclusion:
*459 “In Allivor vs. Furnival, 1 C. M. & R., 296, it was held that, if by the laws of a foreign country, assignees or syn- . dies of a foreign bankrupt may sue there, the same right to sue in England will be allowed.”
Baron Parke says:
“ This is a peculiar right of action created by the law of the country, and we think it may by the comity of nations be enforced in this, as much as the right of foreign assignees or curators, or foreign corporations appointed or created in a different way from that which the law of this country requires.”
In 60 Maryland, 119, Glenn vs. Williams, which was an action brought by the present plaintiff against a subscriber in the same category with the defendant’s testator to recover under the decree of the chancery court of Richmond above referred to, the court expressly held that the plaintiff, as trustee, had the right to maintain a suit in the State of Maryland. It is insisted, however, that that case should not be construed as authority here. But I can see no reason why such should be the case. The Court of Appeals of Maryland, like this court, is governed by the decisions of the Supreme Court, and has no right to decide in opposition to it; unless under the inspiration of a statute of the State; and the decision in the Maryland case, that the case of Clark and Booth is no bar to the maintenance of a suit by the plaintiff’ in Maryland, is undoubtedly an authority that the plaintiff, as trustee, has the same right to sue in the District of Columbia.
Second. It is insisted that, even if the trustees have the right to maintain an action in the District of Columbia, the present action is not maintainable, because it is averred that no assignment has been made by the former trustees to Mr. Glenn, of the property of the company ; and that, without such assignment, Mr. Glenn could not be vested with the title to the assets or credits of the company. It is insisted that the claims for the SO per cent, are choses in action, which cannot be transferred except by formal assignment.. But, first, it may be remarked that the right to exact this , *460 30 per cent., as fixed by the decree, was never in the former trustees at all; it was created by the chancery court by its decree, which declared that this assessment should be paid and collected.
In 60 Maryland, to which I have referred, the defendant interposed the plea of the Statute of Limitation, and insisted that his liability was created more than three years before the bringing of that suit; but the court held that the liability to pay the assessment of 30 per cent, sued for in that action, as in this, arose only from the time of the passing of that decree, and that a suit brought within 3 years from that date was not obnoxious to the plea of the statute. The decree, page 156 of the record, declared :
“That the said John Blair Hoge and John J. Kelley, are authorized and directed to transfer and deliver to the said John Glenn, substituted trustee as aforesaid, * * * all of the estate and property of the said company of every kind and description, now in possession of them, the said Hoge and Kelley, or either of them;”
The only transfer required to be made by the old trustees, according to the terms of the decree, was all snch estate and property as was then in the possession of the old trustees; but the assessment of 30 per cent, created simultaneously by the decree was not in the previous trustees, and was not, therefore, required to be the subject of an express transfer. The decree expressly authorizes the collection of these assessments by the present plaintiff. On page 173:
“ And the said trustee is hereby authorized and directed to collect and receive the said call and assessment, and to take such prompt steps to that end, by suit or otherwise, and in such jurisdictions as he may be advised.”
Again, in 60 Maryland, page 119, the court uses this language :
“The decree appointing the plaintiff, in express terms, clothes and invests him ‘ with all the rights and powers,’ and charges him ‘ with all the duties of executing the trusts of said deed, to the same effect as were the original trustees *461 therein.’ And as to all choses and rights of action, pertain - ing to the trust, this provision of the decree passed the right thereto to the new trustee as fully as the original trustees held it. He needed no formal assignment thereof from the •original trustee ; the decree itself operated as an assignment. If those trustees bad been beyond the jurisdiction, or had fled the country, it would have been monstrous to contend that the trust should fail because a formal assignment from them to a successor in office could not be obtained. It was •competent to a court of equity to invest the new trustee with all the rights and powers held by the former trustees in respect to the personal assets assigned by the deed ; and in this case the plaintiff', by the decree, is specially ‘ authorized and directed to collect and receive the said call and assessment, and to take such .prompt steps to that end, by suit or •otherwise, and in such jurisdictions as he may be advised.’ We are of opinion, therefore, that the plaintiff' was not only legally appointed, but that he was fully invested with light and power to bring and maintain this action in his own name as trustee.”
But apart from the express authority given by the decree to sue, I think he had a right to maintain the action under the statute of the State of Virginia.
In the quotation by the defendant’s counsel from Ferry on Trusts, section 284, these words occur :
“ In some States it is provided by statute, that, upon qualification by the newly appointed trustee, the trust estate shall vest in him in like manner as it had or would have vested in the trustee in whose place he is substituted. It has been determined that no conveyance is necessary where such statutes are in force, but that the trust estate vests immediately upon the appointment, by virtue of the statute, wdth all the powers and duties essential to the purpos»s of the trust.”
By the fifth section of chapter 178 of the Code of Virginia, as amended by the act of February 4, 1854, it is declared:
“ And, in any case, when a trustee, and when there is- *462 more than one, all the trustees in any deed of trust shall have died, or. removed beyond the limits of the State, or shall decline to accept the trust, any person interested in the execution of the deed may apply by motion to the circuit court, county or corporation court of any county or corporation in which such deed is recorded, who may appoint a trustee or trustees in place of the trustee or trustees named therein ; and the trustee or trustees so appointed and accepting the same, shall be substituted to all the rights, pow7ers, duties and responsibilities of the trust named in the deed of trust.”
By subsequent statutes, this provision is extended to the case where a trustee has accepted the trust, but in the opinion of the court it is for the benefit of the trust to allow the trustee to withdraw. If this statute were in force with respect to the Chancery Court of the city of Richmond, the appointment, by the terms of this statute, would vest in the trustee the authority to sue in the absence of any assignment.
But, it is insisted next, that the Chancery Court of the city of Richmond was without authority to pass the decree in this cause, appointing the plaintiff trustee, and this contention is based upon the idea that this section, to which I have referred, as amended and taken together with its amendments, only authorizes the appointment of a trustee in the cases named by a circuit court, and upon motion, as expressed in the statute which I have quoted. It may be remarked, as was said in the case in 60 Maryland, 111, that • it is not to be assumed that a decree of a regularly organized court, professing to have jurisdiction, whether of our own or of a sister State, nor is it to be presumed that such a decree of a court was without jurisdiction.
“The presumption is the other way, and the party seeking to avoid the effect of the judgment or decree, must allege and show affirmatively that it was rendered without jurisdiction, whether that want of power be in defect of process or otherwise. It. is alleged in the declaration in this case that the Virginia court was one of competent jurisdiction ; but irrespective of that allegation, there is no intendment *463 against the validity of the decree for want of jurisdiction in the court that rendered it ; for the comity and respect which are justly due from one State to another, would forbid the courts of this State to presume that the tribunal which pronounced the decree had transcended its jurisdiction.”
Without pursuing the ingenious and learned argument by the counsel for the defendant on this branch of the subject, it is sufficient to say that, in my judgment, the act of the assembly of Virginia, approved April 15, 1874, chapter 202, “ entitled, an act to amend and re-enact section 6 of chapter 305 of the Code of Virginia, relative to the jurisdiction of the Chancery Court of the city of Richmond,” removes any doubt on this subject, and shows clearly that the Chancery Court of the city of Richmond possessed full authority to pass the decree in question, whether upon motion or upon a bill filed like that in the present case ; and that the trustee appointed under the decree of that court, by virtue of his appointment, and without any formal transfer from his predecessors in office, became vested with all the rights, powers and authority which belonged at the time to the previous trustees, or which would have devolved upon them under the said decree if they had remained in office.
Unless the plaintiff have the right to sue by virtue of the decree and in this jurisdiction, it would result that no one would be authorized to sue, and all these subscriptions in this District would remain unpaid, and with no power to enforce them.
The authority much relied upon by the defendant, 24 Grattan, 404, was decided at the January Term, 1874, before the passage of the act of the 15th of April of that year, to which I have referred, and as conclusively settling the jurisdiction of the Chancery Court in this matter. But the decision in that very case, however, does not go to the effect that the Chancery Court of the city of Richmond, before the passage of the act of 1874, was without authority to appoint a trustee, for the court says:
“ These provisions make it very clear that the Circuit Court of Richmond is the proper tribunal for the appoint *464 ment of trustees in this and other cases of a similar character Whether the Chancery Court may also exercise jurisdiction in like cases, we are not called on to decide.”
But since the passage of the last named act, the matter is no longer an open question.
I refer again to the case in 60 Maryland, which decision covers several of the points made in the further argument of the present case.
First, it was insisted that this decree was not passed upon proper appearance and hearing of the plaintiff company, because the corporation failed to appear in its corporate capacity to the suit. Upon this point the court held that as there had been sufficient service of process on some of its directors, as one of them appeared and answ'ered, though not for the corporation, and as the cashier of the company, as representative of the company, was served with process and appeared and answered, and as the surviving trustees in the deed of assignment also appeared and answered, the decree passed could not be pronounced void for want of jurisdiction of some of the non-resident defendants who were not served with process.
If they failed to appear in court to make defence, it was their own fault and disregard of the process of the court, and the court was fully justified in proceeding in their absence. It must be recollected that this court cannot sit in review' of the decree of the Virginia court, for the correction of errors or irregularities that may have been committed in the exercise of a competent jurisdiction. If there be such errors or irregularities in the proceedings, they could, possibly, have been the subject of a direct appeal from the decree ; but they cannot be allowed to affect the validity of the decree in a collateral proceeding like the present.”
The power of the court to make the present assessments is also considered in that cause, and it is held by that court that its authority is unquestioned, and that the decree of the court determining and making an assessment upon the capital stock for such purposes, was binding and effective *465 upon the stockholders, who were in their individual capacities parties to the cause.
I had no purpose of doing more to-day than to announce my opinion, because of the number of matters pressing at this time ; but I have been led into a partial and somewhat imperfect expression of the views I entertain, and from the best consideration I have been able to give to the case, I am clearly of the opinion the demurrer should be overruled. It is so ordered, with leave to the defendant to plead.