## GLENN v. LIGGETT.

## GLENN v. TAUSSIG.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF MISSOURI.

Nos. 306, 307. Argued April 29, 1890.—Decided May 19, 1890.

A writ of error, the citation and the bond, all of them were dated the day
before the judgment sought to be reviewed was rendered, and the writ
and the citation were filed on that day in the office of the clerk of the
court below: *Held,* on what appeared in the record, that it must be con-
cluded that the allowance of the writ, the signing of the citation, the
approval of the bond, and their filing took place after the rendering of
the judgment; that any discrepancy must be attributed to clerical errors;
and that this court had jurisdiction of the writ.

The rulings in *Hawkins* v. *Glenn,* 131 U. S. 319, confirmed, and applied to
these cases.

The statute of limitations of Missouri did not bar the present actions.

By the statute of Virginia the balance of unpaid subscriptions to the stock
of a Virginia corporation was payable as called for by the president and
directors: *Held,* that the president and directors stand for the corpora-
tion; and that, as the corporation was a party to a suit in a court of
Virginia, making a call, it sufficiently represented the president and
directors and the stockholders.

The rights of a stockholder must, in a suit to recover on the call, be adju-
dicated according to the requirements of the statutes and jurisprudence
of Virginia, which State created the corporation, and in reference to
whose laws the contract of the stockholder was made.

As the suit in the court of Virginia was properly brought, and it had juris-
diction as to subject matter and parties, its adjudication cannot be
reviewed or impeached in the collateral suit on the call, except for actual
fraud.

The making by the court of one call, leaving a balance uncalled, did not
prevent the making of a further call by the same court, or by one of
competent jurisdiction, to which the cause was transferred.

THESE were two actions at law brought in the Circuit Court
of the United States for the Eastern District of Missouri, on
the 12th of July, 1886, by John Glenn, trustee of the National
Express and Transportation Company, one against John E.
Liggett, and the other against Charles Taussig and Morris

Taussig. The cases were disposed of in the Circuit Court on a demurrer in each case to an amended petition. The demurrer was sustained in each case and judgment entered for the defendants, with costs, to review which the plaintiff has in each case brought a writ of error.

In the suit against Liggett the plaintiff claims to recover $1890, with interest from December 14, 1880, and $3150, with interest from March 26, 1886; and in the suit against the Taussigs, $3000, with interest from December 14, 1880, and $5000, with interest from March 26, 1886.

The first cause of action, as set out in the amended petition against Liggett, is as follows: Liggett subscribed for 63 shares of the capital stock of the National Express and Transportation Company, a Virginia corporation, created by an act of the General Assembly of that State, approved December 12, 1865, and thereby promised to pay to that company for each share, $100, in such instalments and at such times as he might be lawfully required to pay the same according to the legal tenor and effect of the laws under which the company was so incorporated, and his subscription to said stock, whereby, and by force of such subscription, he became a stockholder in the company and agreed to sue and be sued, plead and be impleaded, contract and be contracted with, in said corporate name, as to all matters touching the property, rights and obligations of the corporation. On the 20th of September, 1866, the corporation, having become insolvent, by its deed of that date, duly executed, acknowledged and recorded, assigned to John Blair Hoge and C. Oliver O'Donnell, both citizens of Maryland, and John J. Kelly, a citizen of New York, in trust for the benefit of the creditors of the company, all its property, in trust to collect all the debts, claims and moneys payable, to reduce the same to money, and to apply the proceeds to the trusts declared by the deed, including the trust therein declared for the payment of the debts of the company in the order of priority therein provided, and shortly thereafter ceased to do business. The defendant assented to said deed, and thereby promised to pay to said trustees for each share of stock so subscribed for by him the balance of

the $100 due on each share of stock, uncalled for at the time
of the making of the deed, whenever he might be lawfully
called upon to pay the same, according to the legal tenor and
effect of the laws under which the company was incorporated
and the subscription made. At the time of the execution and
delivery of the deed, the company had called for ·20 per cent
of the par value of the stock. The trustees appointed by the
deed neglected to perform the trusts thereby created, and the
validity and effect of the deed were drawn in question in the
courts of various States in which the stockholders resided, and
the enforcement thereof was hindered. In November, 1871,
William W. Glenn, of Baltimore, being a judgment creditor of
the company, filed a bill in the Chancery Court of the city of
Richmond, it being a court of competent jurisdiction in such
cases, in his own behalf and in behalf of all other creditors of
the corporation, against it and certain of its officers and the
trustees named in the deed of trust, as defendants; by which
bill it was sought to obtain from that court a judicial deter-
mination of the validity of the deed, and a judicial construc-
tion of it, and the establishment of the legal effect and
obligation of it upon all property, rights and persons affected
thereby, and also to enforce the trusts thereby declared in
favor of the creditors of the corporation. Pending that bill,
William W. Glenn died, and in the year 1879 the suit was re-
vived in the name of John W. Wright, sheriff of the city of
Richmond, and as such duly constituted official administrator
of said Glenn. After such revivor, an amended bill was filed,
to which bill the corporation, certain of its officers, and Hoge
and Kelly were made defendants (O'Donnell having died).
By that bill it was sought to obtain, in addition to the relief
prayed for in the original bill, an account and establishment
of the debts due by the company and secured by the deed of
trust, and an account of the property and estate subject to the
terms of the deed, including the amount of capital stock yet
remaining unpaid and uncalled by the company and subject to
be applied to the payment of its debts, the removal of the sur-
viving trustees, the appointment of a new trustee or trustees
in their room, an assessment or call to be made by the court

on the uncalled and unpaid capital stock and the persons liable
to pay the same, for the purpose of providing means to pay
the debts of the corporation, and other appropriate relief.
The company was duly served with process in the cause, in
accordance with the laws and practice of the State of Virginia,
certain of its officers were summoned, and the surviving trus-
tees appeared voluntarily to the suit and answered the original
and amended bills, whereby the court acquired full jurisdiction
to decree as to all the matters and things involved in the suit.

Such proceedings were had in the cause that, on the 14th of
December, 1880, the court decreed as follows: (1) That the
deed of trust of September 20, 1866, was valid under the laws
of Virginia and binding upon the corporation; (2) that, at the
time of the execution of the deed, the corporation had called
for 20 per cent of the amount payable by the subscribers to
its capital stock, and that 80 per cent of that amount, being
$80 on each share, remained unpaid and uncalled for at the
date of the decree, and subject to be applied to the payment
of the debts of the corporation secured by the deed of trust;
(3) that the right to receive such 80 per cent from the persons
liable to pay it, as and when it should become payable by the
terms of the contract between the company and the subscrib-
ers to the stock, was vested by the deed in the trustees and
their survivors, to be applied, when so collected, to the pay-
ment of the debts secured by the deed; (4) that the unpaid
$80 per share was, by the terms of the contract between the
company and the persons liable to pay the same, payable only
in such amounts and at such times as the same might be
required to be paid by the company through its president and
board of directors; that no power or authority to sue for any
part thereof was vested in the company or in the trustees
under the deed, unless and until such call should first be made
by the corporation, and that the trustees acquired no power
to make such call by force of the deed of trust or otherwise;
(5) that there was no property of the company wherewith to
pay its debts, except the amount so remaining uncalled of its
capital stock, and it was the duty of the proper officers of the
corporation to call upon the persons liable therefor, to pay a

sufficient amount of the unpaid $80 per share to carry out the trusts of the deed and pay the creditors secured thereby, but that the corporation and its proper officers had for many years wrongfully neglected to make such call; (6) that the unpaid and uncalled $80 per share remaining in the hands of the holders of the capital stock constituted a trust fund for the payment of the creditors of the company under the deed of trust; and that, by reason of the neglect and failure of the corporation to call for the payment of a sufficient amount thereof to satisfy its debts under the deed of trust, and thereby enable the trustees to sue for and recover the amount so called, the court possessed and would exercise such power, and would call for so much of the said uncalled amount' as would be necessary to perform the trusts declared by the deed and pay the debts secured thereby; (7) the surviving trustees were removed by the decree and the plaintiff was appointed by it in their stead, to execute the trusts of the deed; (8) there were debts owing by the company, entitled to be paid under the deed of trust, amounting to $509,392.41, each of which debts was particularly ascertained and ordered by the decree to be paid. The decree further adjudged that it was necessary and proper that 30 per cent of the par value of t ch share of the stock should be called for and required to be paid by the subscribers therefor and their assigns, for the purpose of paying the debts of the company under the provisions of the deed of trust; and that a call and assessment be and the same was thereby made upon the stock and stockholders of the company, and their assigns, of 30 per cent of the par value of the stock, being $30 on each share thereof, the same, when paid, to be paid to and received by the plaintiff as trustee under the deed, in the stead of the original trustees therein named.

The plaintiff accepted the appointment so made, and complied with its terms and conditions, and was and is duly qualified to act as such substituted trustee, and to have the rights, and perform the duties, conferred upon and required of him by the decree. By force thereof, and of the statute of Virginia in such case made and provided, he, upon accepting such appointment, and qualifying as such trustee, as required

by the decree, became and still is substituted to all the rights, powers, duties and responsibilities of the trustees named in the deed of trust, and became and is lawfully entitled to receive and collect the assessment or call of $30 per share on each share of stock of the company, from the persons liable to pay the same. By virtue of the premises the defendant became indebted to him in the sum of $1890, being $30 on each of the 63 shares of stock. In the year 1884, the plaintiff instituted suit in the Circuit Court of the United States for the Eastern District of Missouri against the defendant to enforce such liability, and on the 15th of July, 1885, suffered a non-suit in the case.

For a second cause of action, the amended petition stated that the suit so instituted in the Chancery Court of the city of Richmond was, after the 14th of December, 1880, transferred to the Circuit Court of the county of Henrico, in the State of Virginia, a court of competent jurisdiction; that such further steps were taken therein that, on the 26th of March, 1886, a further decree was entered in the cause, adjudging that, for the payment of a large balance of the indebtedness of the company, so established, it was necessary and proper to make a call for the residue of 50 per cent remaining uncalled for and unpaid on the capital stock of the company, and ordering and decreeing that a call and assessment be made, and the same was thereby made, on the capital stock and the stockholders of the company, of $50 on each share thereof, and requiring the stockholders of the company and each of them, and their legal representatives and assigns, to pay to the plaintiff the several amounts thereby called for, and authorizing and requiring him to collect and receive said call and assessment; and, by virtue of the premises, the plaintiff claimed to recover $3150, being $50 on each of the 63 shares of stock.

The demurrer of the defendant Liggett set forth as grounds of demurrer that the amended petition did not state facts sufficient to constitute any cause of action; that it appeared from its face, that no cause of action accrued to the plaintiff by reason of any of the matters set forth in either the first or the

second count, at any time within ten years next before commencement of this suit, or at any time within five years next before its commencement, or at any time within ten years next before the commencement of the suit in which the plaintiff alleged that he suffered a non-suit; that both of the causes of action are barred by the statute of limitations of Missouri; and that the Chancery Court of the city of Richmond had no jurisdiction to make the assessment alleged, and it and the further assessment were and are void.

The suit against Liggett was commenced on the 12th of July, 1886, by the filing of a petition. A writ of summons was issued on that day and served on him on the 19th of July, 1886. A demurrer to the petition was filed on the 21st of September, 1886. The petition and the demurrer amounted in substance to the same as the amended petition and the demurrer thereto. On the 16th of October, 1886, the court sustained the demurrer. 28 Fed. Rep. 907. The decision of the court was based on views which it had previously expressed on demurrers to petitions at law and bills in equity for like causes of action, in 23 Fed. Rep. 695, and 24 Fed. Rep. 536. The ground of decision was, in all of the cases, that the suits were barred by the statute of limitations of Missouri.

On the 3d of November, 1886, a judgment was entered in the present suit against Liggett, for the defendant, and for his costs. On the 14th of December, 1886, by consent of parties, the judgment of November 3, 1886, was set aside. The plaintiff then, by consent, filed the amended petition, the contents of which are before set forth. The defendant filed his demurrer thereto, the court sustained the demurrer, and, the plaintiff electing to abide by his amended petition, judgment was entered for the defendant upon the demurrer, and for his costs. The judgment then proceeds, under date of December 14, 1886: "And thereupon the plaintiff, by attorney, presents to the court a writ of error to remove this cause to the Supreme Court of the United States, and a citation citing and admonishing the said defendant to be and appear at a Supreme Court of the United States, on the first day of the next term thereof, to be begun and held at Washington, D. C.,

on the second Monday of October next; which said writ of error is allowed and said citation signed by the judge; and said plaintiff also presents to the court his bond, in the penal sum of five hundred dollars, which bond is approved and ordered to be filed as part of the record herein."

*Mr. Enoch Totten* (with whom was *Mr. Mason G. Smith* on the brief) first argued a motion to dismiss No. 306 for want of jurisdiction. The following were the grounds for the motion:

(1) There was never any writ of error issued to the said Circuit Court to bring up the judgment complained of;

(2) There never was any writ of error returned to or filed in this court, which had been previously directed to the Circuit Court, to bring up to this court for review the judgment complained of;

(3) This court is without jurisdiction to hear and determine this cause, there having been no writ of error issued or allowed, to bring into this court for review the judgment of the said Circuit Court herein.

This court can obtain jurisdiction to review a final judgment at law, rendered by a Circuit Court of the United States, only upon a writ of error. Rev. Stat. § 691; *Sarchet* v. *United States*, 12 Pet. 143; *Bayard* v. *Lombard*, 9 How. 530; *Saltmarsh* v. *Tuthill*, 12 How. 387; *Washington County* v. *Durant*, 7 Wall. 694.

The only writ of error in this record was "brought" on the 13th of December, 1886, the day before this judgment was rendered. A writ of error is "brought" when it is filed in the court which rendered the judgment. *Brooks* v. *Norris*, 11 How. 203; *Credit Co.* v. *Ark. Central Railway*, 128 U. S. 258.

The writ of error of December 13th was *functus officio:* it had operated on the judgment of November 3d, and was dead when that judgment was set aside. No other writ having been sued out, and no other citation having been signed or served in this case, it follows that there was and is no writ of error bringing up this last judgment for review.

A writ of error must be returned to this court during the term to which it is made returnable. If not so returned it becomes inoperative. *Grigsby* v. *Purcell*, 99 U. S. 505; *Radford* v. *Folsom*, 123 U. S. 725; *Blair* v. *Miller*, 4 Dall. 21; *Castro* v. *United States*, 3 Wall. 46; *Edmonson* v. *Bloomshire*, 7 Wall. 306; *Fayolle* v. *Texas & Pacific Railroad*, 124 U. S. 519; *Richardson* v. *Green*, 130 U. S. 104; *Hill* v. *Chicago &c. Railroad Co.*, 129 U. S. 170; *Norton* v. *Brownsville*, 129 U. S. 505.

In *Edmonson* v. *Bloomshire*, 7 Wall. 306, 310, MR. JUSTICE MILLER, delivering the opinion of the court, said on this subject: "The intelligible ground of this decision is, that the writ of error and the appeal are the foundations of our jurisdiction, without which we have no right to revise the action of the inferior court."

That a writ of error cannot be issued until there is a *judgment*, see *Cohens* v. *Virginia*, 6 Wheat. 264, 409; and the language, form and directions of the *writ of error* are prescribed under Rev. Stat. § 1004.

*Mr. John Howard* opposing the motion.

*Mr. John Howard* (with whom was *Mr. Charles Marshall* on the brief) for plaintiff in error, on the merits.

*Mr. Mason G. Smith* (with whom was *Mr. Enoch Totten* on the brief) and *Mr. George W. Taussig* for defendants in error, on the merits.

MR. JUSTICE BLATCHFORD, after stating the case as above reported, delivered the opinion of the court.

The writ of error is dated the 13th of December, 1886, and was allowed by the district judge, but the allowance bears no date. The writ bears the mark of having been filed in the office of the clerk of the Circuit Court on the 13th of December, 1886. The citation bears date the 13th of December, 1886, and is marked as having been filed on that day in the office of the clerk of the Circuit Court, and appears to have

been served on the attorneys for the defendant on the 22d of December, 1886. The bond bears date the 13th of December, 1886, and was approved by the District Judge, the approval bearing no date, and is marked as filed in the office of the clerk of the Circuit Court on the 14th of December, 1886.

It is objected by the defendant Liggett, that this court has no jurisdiction of the writ of error, because the writ, the citation and the bond, all of them bear date the 13th of December, 1886, and because the writ and the citation were filed in the office of the clerk of the Circuit Court on that day, while the judgment sought to be reviewed was not rendered until the 14th of December, 1886. But the record distinctly states, that, after such judgment was rendered, the plaintiff presented to the court a writ of error, a citation and a bond, and that the court allowed the writ of error, and the citation was signed by the judge, and the bond was approved and ordered to be filed as part of the record; and the writ of error, the citation and the bond are set forth at length. We must, therefore, conclude that all these things, including the filing, took place after the judgment of the 14th of December, 1886, was rendered and entered; that whatever discrepancy appears must be attributed to clerical errors; and that the matter is not open to the objection made, that the writ of error was brought, the citation signed and the bond given, before the judgment was entered, even if that fact would have been available as an objection, if it existed. The case is like that of *O'Dowd* v. *Russell*, 14 Wall. 402.

Upon the merits, we are of opinion that the judgment in favor of Liggett must be reversed. The decisions of the Circuit Court were made before the case of *Hawkins* v. *Glenn*, 131 U. S. 319, was decided by this court, on the 13th of May, 1889. All the points urged on the part of the defendant in the present case were fully argued, considered and decided by this court in *Hawkins* v. *Glenn*. The syllabus of that case correctly embodies the rulings of this court, in these words: "In the absence of fraud, stockholders are bound by a decree against their corporation in respect to corporate matters, and such a decree is not open to collateral attack. Statutes of lim-

itation do not commence to run as against subscriptions to stock, payable as called for, until a call or its equivalent has been had, and subscribers cannot object, when an assessment to pay debts has been made, that the corporate duty in this regard had not been earlier discharged. Rules applicable to a going corporation remain applicable notwithstanding it may have become insolvent and ceased to carry on its operations, where, as in this case, it continues in the possession and exercise of all corporate powers essential to the collection of debts, the enforcement of liabilities and the application of assets to the payment of creditors."

The facts set forth in the amended petition in the present case appeared in the case of *Hawkins* v. *Glenn*. That was a suit at law, brought in the Circuit Court of the United States for the Eastern District of North Carolina, to recover the amount of the assessment or call of 30 per cent, made by the decree of the Chancery Court of the city of Richmond, on December 14, 1880. The statute of limitations of North Carolina, of three years, was pleaded as a defence. The suit having been brought within three years from December 14, 1880, it was contended in this court, for the defendant, that the cause of action did not accrue within three years before the suit was brought; that the case was essentially unlike that of a call made by the authorities of a corporation which was still doing business; that during the whole of the three years, the provision in the subscription, as affected by the statute of Virginia, which submitted the subscriber to the discretion of the president and directors, as to the time at which calls might be made, had become null; and that, inasmuch as, after the corporation stopped business, the time of making a call was no longer a matter of discretion, but was subject to the direction of the law, the lapse of time before bringing the suit in the Chancery Court of the city of Richmond was to be counted in reckoning, under the statute of limitations, whether the suit subsequently brought against the defendant, under the call made by that court, had been brought in good time.

It was also contended in that suit by the defendant, that the decree of the Chancery Court of the city of Richmond

was void as against him, because he was not a party to the suit. On the latter point, this court said: "We understand the rule to be otherwise, and that the stockholder is bound by a decree of a court of equity against the corporation in enforcement of a corporate duty, although not a party as an individual, but only through representation by the company. A stockholder is so far an integral part of the corporation that, in the view of the law, he is privy to the proceedings touching the body of which he is a member;" citing *Sanger* v. *Upton*, 91 U. S. 56, 58; *County of Morgan* v. *Allen*, 103 U. S. 498, 509; *Glenn* v. *Williams*, 60 Maryland, 93, 116; *Hambleton* v. *Glenn*, 13 Virginia Law Journal, 242, and 9 S. E. Rep. 129.

This court said that it concurred in the decision of the Court of Appeals of Virginia, in *Hambleton* v. *Glenn*, made as to the statute of Virginia, that "as the corporation, notwithstanding it may have ceased the prosecution of the objects for which it was organized, could still proceed in the collection of debts, the enforcement of liabilities and the application of its assets to the payment of its creditors, all corporate powers essential to these ends remained unimpaired;" and that it was the decision "of the highest tribunal of the State where the corporation dwelt, in reference to whose laws the stockholders contracted, and in whose courts the creditors were obliged to seek the remedy accorded;" citing *Canada Southern Railway* v. *Gebhard*, 109 U. S. 527; *Barclay* v. *Talman*, 4 Edw. Ch. 123; *Bank of Virginia* v. *Adams*, 1 Parsons Sel. Cas. 534; *Patterson* v. *Lynde*, 112 Illinois, 196.

This court further said: "We think it cannot be doubted that a decree against a corporation in respect to corporate matters, such as the making of an assessment in the discharge of a duty resting on the corporation, necessarily binds its members, in the absence of fraud, and that this is involved in the contract created in becoming a stockholder. The decree of the Richmond Chancery Court determined the validity of the assessment; and that the lapse of time between the failure of the company and the date of the decree did not

preclude relief, by creating a bar through statutes of limitation or the application of the doctrine of laches. And so it has been held in numerous cases referred to on the argument. The court may have erred in its conclusions, but its decree cannot be attacked collaterally, and, indeed, upon a direct attack, it has already been sustained by the Virginia Court of Appeals. *Hambleton* v. *Glenn, supra.* . . . Although the occurrence of the necessity of resorting to unpaid stock may be said to fix the liability of the subscriber to respond, he cannot be allowed to insist that the amount required to discharge him became instantly payable, though unascertained, and though there was no request, or its equivalent, for payment. And here there was a deed of trust made by the debtor corporation for the benefit of its creditors, and it has been often ruled in Virginia, that the lien of such a trust deed is not barred by any period short of that sufficient to raise a presumption of payment. *Smith* v. *Virginia Midland Railroad*, 33 Grattan, 617; *Bowie* v. *The Poor School*, 75 Virginia, 300; *Hambleton* v. *Glenn*, 13 Virginia Law Journal, 242. This deed was not only upheld and enforced by the decree of December 14, 1880, but also the power of the substituted trustee to collect the assessment by suit in his own name was declared by the Court of Appeals of Virginia, in *Lewis's Administrator* v. *Glenn*, 6 S. E. Rep. 866. See, also, *Baltimore & Ohio Railroad* v. *Glenn*, 28 Maryland, 287. By the deed the subscriptions, so far as uncalled for, passed to the trustees, and the creditors were limited to the relief which could be afforded under it, while the stockholders could be subjected only to equality of assessment, and as the trustees could not collect except upon call, and had themselves no power to make one, rendering resort to the president and directors necessary, or, failing their action, then to the courts, it is very clear that the statute of limitations could not commence to run until after the call was made."

This court then cited the rule laid down in *Scovill* v. *Thayer*, 105 U. S. 143, 155, as applying to the case before it, and said: "In that case it was said by Mr. Justice Woods, speaking for the court: 'There was no obligation resting on the stockholder

to pay at all until some authorized demand in behalf of creditors was made for payment. The defendant owed the creditors nothing, and he owed the company nothing save such unpaid portion of his stock as might be necessary to satisfy the claims of the creditors. Upon the bankruptcy of the company, his obligation was to pay to the assignees, upon demand, such an amount upon his unpaid stock as would be sufficient, with the other assets of the company, to pay its debts. He was under no obligation to pay any more, and he was under no obligation to pay anything until the amount necessary for him to pay was at least approximately ascertained. Until then his obligation to pay did not become complete.' And it was held, 'that when stock is subscribed to be paid upon call of the company, and the company refuses or neglects to make the call, a court of equity may itself make the call, if the interests of the creditors require it. The court will do what it is the duty of the company to do. . . . But under such circumstances, before there is any obligation upon the stockholder to pay without an assessment and call by the company, there must be some order of a court of competent jurisdiction, or, at the very least, some authorized demand upon him for payment; and it is clear the statute of limitations does not begin to run in his favor until such order or demand.' Constituting, as unpaid subscriptions do, a fund for the payment of corporate debts, when a creditor has exhausted his legal remedies against the corporation which fails to make an assessment, he may, by bill in equity or other appropriate means, subject such subscriptions to the satisfaction of his judgment, and the stockholder cannot then object that no call has been made. As between creditor and stockholder, 'it would seem to be singular if the stockholders could protect themselves from paying what they owe by setting up the default of their own agents.' *Hatch* v. *Dana*, 101 U. S. 205, 214. The condition that a call shall be made is, under such circumstances, as Mr. Justice Bradley remarks in the matter of *Glen Iron Works*, 20 Fed. Rep. 674, 681, 'but a spider's web, which the first breath of the law blows away.' And as between the stockholder and the corporation, it does not lie in the mouth of the stockholder

to say, in response to the attempt to collect his subscription, for the payment of creditors, that the claim is barred because the company did not discharge its corporate duty in respect to its creditors earlier.  *County of Morgan* v. *Allen*, 103 U. S. 498.  These considerations dispose of the alleged error in not sustaining the defence of the statutory bar."

We regard these rulings in *Hawkins* v. *Glenn* as disposing of the points urged by the defendant as to the statutes of limitation of Missouri, and as to the want of jurisdiction in the Chancery Court of the city of Richmond to make the call.

Under the statute of Missouri applicable to the present case, if an action was commenced within the statutory limitation of time, and the plaintiff suffered a non-suit, he was allowed to commence a new action within one year after the non-suit was suffered.  The shortest period of limitation insisted on in the present case, under the statute of Missouri, is five years.  The first call was made by the decree of December 14, 1880.  The first suit was brought in 1884.  The plaintiff suffered a non-suit on the 15th of July, 1885.  He brought the present suit on the 12th of July, 1886.  The statute of Missouri, so far as it applies to the present case, was, therefore, complied with.

The point is taken by the defendant that, under the statute of Virginia, the balance remaining unpaid on subscriptions to the stock was payable as called for or required by the president and directors of the company; that it appears by the amended petition that the contract between the company and the subscribers was, that the $80 per share was payable "only in such amounts and at such times as the same might be required to be paid by said company, through its president and board of directors;" and that it is not averred in the amended petition that either the president or any of the directors was a party to the suit in the Chancery Court of the city of Richmond.

But the president and directors stand for the corporation, and it is alleged in the amended petition that the corporation was a party to the amended bill, and that it was duly served with process in the cause, in accordance with the laws and

practice of the State of Virginia. The corporation sufficiently represented the president and directors in their official capacity, in which alone they were to act in making a call, and it also, as held in *Hawkins* v. *Glenn*, sufficiently represented the defendant.

The rights of the parties in the present case must be adjudicated according to the requirements of the statutes and jurisprudence of Virginia, which State created the corporation, and in reference to whose laws the contracts of the subscribers to stock were made. The legislation of Missouri, which is invoked to the effect that, for the purposes of the statute of limitations of that State, the liability of a stockholder in a corporation to a creditor becomes fixed by the insolvency and dissolution of the corporation, and then becomes a primary and unconditional obligation, and the statute commences to run at once, can have no application to the present case. Nor can the adjudication of a court of Virginia, in a suit properly brought, and where it had jurisdiction as to subject matter and parties, be reviewed or impeached in a collateral suit like the present, except for actual fraud.

The further point is urged by the defendant, in regard to the decree of March 26, 1886, and the call for 50 per cent made thereby, that the Circuit Court of the county of Henrico was without jurisdiction to make a valid decree, and that such call or assessment was void. The view urged is, that the decree of December 14, 1880, was a final decree, without any reservation of any right to ask for a further call or assessment; and that the transfer of the cause to the Circuit Court of Henrico County was unauthorized. But we see nothing in the terms of the decree of December 14, 1880, to exclude the authority of the same court, or of any court to which the cause should be properly transferred, to make the further assessment of $50 per share; and the allegation in the amended petition as to the transfer of the suit is, that the Circuit Court of the county of Henrico was "a court of competent jurisdiction." This means that it was a court of competent jurisdiction to accept the transfer and to take jurisdiction of the suit.

In the case against the Taussigs, Charles Taussig died after the writ of error was taken, and the suit was ordered by this court to proceed against John J. Taussig and George W. Taussig, executors of Charles Taussig, deceased, and Morris Taussig, as defendants in error. The claim against the Taussigs is on 100 shares of stock, and the amended complaint in the suit against them is like that in the suit against Liggett. The facts and the principles of law involved are the same as in the case against Liggett, the only differences being immaterial ones, namely, that the writ of error in the Taussig case was filed in the Circuit Court on the 14th of December, 1886, and the citation was dated and filed on the 14th of December, 1886; that the defendants state, as grounds of demurrer, only that the causes of action accrued more than five years and more than ten years prior to the commencement of the suit and to the time when the nonsuit mentioned in the amended petition was suffered by the plaintiff; and, as a further ground of demurrer, that the assessment of 30 per cent on the stock of the company, made by the Chancery Court of the city of Richmond, and the subsequent assessment of 50 per cent, made by the Circuit Court of Henrico County, were void and of no force or effect as against the defendants, because those courts acquired no jurisdiction over the defendants, or any jurisdiction to make any assessment which should furnish any right of action to the plaintiff against the stockholders of the company.

*The judgment in each case is reversed, and each case is remanded to the Circuit Court, with a direction to overrule the demurrer to the amended petition, and to take such further proceedings as shall not be inconsistent with this opinion.*

Mr. Justice Brewer dissented.