Price, J.
The questions in controversy between the parties are —
(1) Did the trial court err in the admission of testimony introduced by the defendants?
(2) Did the court err in refusing to instruct the jury as requested by the plaintiff?
(3) Is there error in the general charge prejudicial to the plaintiff below?
(1) It was alleged in the petition that the policy of insurance was taken out by a co-partnership known as “The Heirs of Daniel Rose,” and on their property, and that on that account they became liable to the assessment made by this court, referred to in the foregoing statement of the case. The answer denied that there ever was such á co-partnership, and that as partners, the defendants did not apply for or receive said policy. The existence of the partnership relation was thus put in issue, and it is claimed by the plaintiff in error, that the trial court admitted improper evidence for the defendants to support their denial.
It seems that the property insured was a furniture factory at Roscoe, Ohio, which, in whole *363 or in part, had belonged to Daniel Rose, the father of the defendants, and it was operated at least part of the time under the name of D. Rose & Son. One of the defendants states that the firm prior to the father’s death was “Rose Bros.,” composed of himself and his brother Marion. In -another part of his testimony, he says that the business was conducted in the name of D. Rose & Son as before.
The defendants have not been able to make a clear statement of the true relations they sustained to the factory. The father, Daniel Rose, died on the 28th day of April, 1888, and the policy under consideration was not issued until about October 1, 1888. W. E. Rose, one of the defendants, became administrator of his father’s estate, and he says he procured the policy in the "name of “The Heirs of Daniel Rose.” As administrator he never sold the insured property. The issue on the subject of a partnership relation between the defendants when the policy issued and while it was held, was therefore important. The court permitted W. E. Rose, defendant, to answer the following questions: “I want to ask you if on the 1st day of October, 1888, to state to the jury whether or not there was a partnership known by the firm name' as ‘The Heirs of Daniel Rose’?” Answer: “I know as a positive fact it was not.” John J. Rose, another defendant, was asked the following: Question: “I want to ask you if there was in 1888 and 1889 a partnership in which you was connected that was known and doing business as a partnership under the name of the Heirs of D. Rose?” Answer: “There was no such partnership existed.” Question: *364 “Was you ever a member of a partnership of that character?” Answer: “Never was.” These and other questions of a similar character were allowed to be answered over the objections of the plaintiff.
We think the persons thus interrogated were permitted to state their opinions or conclusions, rather than the facts upon which the jury should pass. In a merely collateral case or proceeding, the existence or non-existence of a certain firm might be shown by such testimony, but where the issue is direct between the parties, as in this case, as to whether the defendants or either of them were members of a co-partnership, which is charged with being the owner of the policy of insurance, the above course of inquiry can not be justified. The facts should be elicited concerning the true relation, if any, the defendant sustained to the firm. What had he invested, if- anything, in such firm? What, if anything, did he pay of its debts, or receive of its earnings, and so on, in order that the jury, under the instructions of the court as to the law applicable, might determine whether a partnership relation existed.
The course adopted in the above questions and answers gave to the witness the right to decide the question and left nothing for the jury to find. This view should be somewhat emphasized, because of the other issue made by the amendment to the petition to the effect, that if they were not partners, they were jointly interested in the insured property and in the policy of insurance, for it clearly appears in the evidence, that when the factory was totally destroyed the loss was paid to and divided between the heirs of Daniel Rose, *365 including the defendants in error. The money received from the insurance company was not administered upon in due course of law by the administrator, but with other insurance money was divided between said heirs. In the light of these facts and. circumstances, we are of opinion the objections to” the above questions should have been sustained.
There is another class of testimony objected to, and its admission is assigned for error. While J. J. Rose, one of the defendants, was on the stand, his counsel put the following questions, which were objected to: “Jack, was you ever apprised of any action brought against this company in the Supreme Court of Ohio?” Answer: “I never was. The first I ever heard of this case was when a voluminous batch of Supreme Court decisions and about a half a wagon load of papers and one thing and another was served on us— was decisions, and so forth, of the Supreme Court deciding that our liability — ” Question: “I don’t care about that. Was you ever served with any notice that the case was pending in the Supreme Court?” Answer: “Never was.” Question: “Did you know that there was one pending?” Answer: “I did not.”
The case referred to as pending in the Supreme Court. was the one in which the company was dissolved and the assessments made, one of which assessments is here in dispute. It was not an issue in the case, whether the defendants had been parties to that case. Beyond doubt they were not parties, nor was it necessary for them to be such in order to give the court the authority to dissolve the corporation and make a decree *366 assessing stock or policy-holders. The assessing decree is in the record, and it does not attempt to determine who the policy-holders then were. No one is named as the holder of a policy. On the contrary, the decree classifies the liabilities of the company according to their date, and also classifies policies liable to assessment as those held by persons between April 25, 1889, and the 18th of December, 1890, without naming any such persons. In that proceeding to dissolve and decree a necessary assessment, the policy-holders were represented by the corporation, and they were neither necessary nor proper parties. The decree in that proceeding is conclusive as to the necessity for, and the amount of the assessment, but forecloses no-right to defend against it on any of the grounds contained in the answer.
In Eversmann, Receiver, v. Schmitt, 53 Ohio St., 174-188, this court was passing on the relation stockholders sustain to a building and loan association. In the first sentence of the opinion it is said that, “mutuality is the essential principle of a building association.” On page 188, the court, through Minshall, C. J., says: “But it is insisted that Mrs. Schmitt and the other members were not parties to the suit in which the receiver was appointed, and that he had no power to .make the assessment, and it is not binding, upon them. This objection is without weight. It is not necessary that the members should as individuals have been made parties to that suit. They are parties in their corporate name and capacity, and for the appointment of a receiver, that was sufficient. We will presume that the receiver was duly appointed, as there is nothing to the contrary. As receiver,' *367 it was his duty to collect the assets and wind up thé affairs of the association. This could only be done by ascertaining the loss and making an assessment on the members to meet it * * *.”
In the action or proceeding to dissolve The Union Mutual Fire Insurance Co., this court decreed the assessment. It was an insurance company organized on the mutual plan, and the law as declared in Eversmann, Receiver, v. Schmitt, as to the absence of the policy-holders, is appropriate here. See also Hawkins v. Glenn, Trustee, 131 U. S., 319-336; Glenn, Trustee, v. Liggett, 135 U. S., 533; Milliken et al. v. Whitehouse et al., 49 Me., 527; Mutual Fire Ins. Co. v. Phoenix Furniture Co., 108 Mich., 170; Langworthy v. Garding, 74 Minn., 325; Commonwealth Mutl. Fire Ins. Co. v. Hayden et al., 61 Neb., 457. In the latter case it is said by the court: “We do not mean that it (the judgment of assessment) is conclusive as against any individual sued as a stockholder, that he is one, or if one, that he has not already been discharged by payment to some other creditor of the corporation the full measure of his liability, or that he has no claims against the corporation, or judgments against it which he may, in law or equity, as any debtor, whether by judgment or otherwise, set off against a claim, or judgment, but in other respects it is an adjudication binding him.” See also N. H. Mutl. Fire Ins. Co. v. Rand, 24 N. H., 436, 437.
What then of the evidence admitted to the effect that the defendants were not parties or served with process in the proceeding in which this assessment was made? At first blush it might look as immaterial merely, but not preju *368 dicial. There was no issue made on the subject, and the only tendency of such testimony was to arouse a prejudice against the attempt to enforce a liability fixed in a case to which the defendants were not parties. It was wholly foreign to the issues on trial, and the court failed to' caution the jury about it at any stage of the case. If this were the only error in the record, we might pass over it, with the hope that it became obscured in the consideration of more weighty matters in controversy. But there are other errors.
(2) The plaintiff requested the court to give before the beginning of the arguments of counsel, several requests, some of which were given without modification. The sixth request was not so given. It reads: “6. If you find from the evidence that the defendants met with a total loss on the property insured in the policy in question, and were paid for the same by said insurance company, then you are instructed that the defendants remained liable to assessments for debts incurred by said insurance company up to the end of the term for which the defendants ’were insured, notwithstanding that they may have receipted in full for their policy and cancelled the same ánd returned it to the company and received from the company their premium note.” But the court did not give the charge except in connection with the modification: “Unless you find from the evidence that the settlement as claimed by the defendants was the settlement made with the company or its officers and agents, and was afterwards and with knowledge thereof approved and ratified by the company.”
*369 Was the proposition before .the modification sound law ? If so, it should have been given before argument. If not sound, it should have been rejected. Subdivision 5 of Section 5190, Revised Statutes, provides: “When the evidence is concluded, either party may present written instructions to the court on matters of law, and request the same to be given to the jury, which instructions shall be given or refused by the court before the argument to the jury is commenced.”
It seems to us that the proposition, without the modification, should have been given. The statute quoted does not contemplate that such written instruction should cover every branch and feature of a case on trial, including the effect of an affirmative defense of payment, settlement or release. The request appears to be sanctioned by Section 3666, Revised Statutes, which in part reads: “When policies issued on the mutual plan are cancelled * * * the assured must first pay his proportion of all losses which have actually occurred up to the date when the policy was received for cancellation.”
The seventh instruction requested to be given before argument is to the effect that, if the jury “should find from the evidence that one J. C. Richardson undertook to make a settlement with the defendants of their assessable liability at the time loss was paid for, you are instructed that, unless you also find from the evidence that said Richardson was duly authorized by the proper authorities of said company to make such settlement, that nothing said or done by said Richardson effected a release of defendants for any liability to assessment.” This was not given except with' *370 the modification ¡.“Unless the settlement he made so operated and the company with knowledge thereof approved and ratified the same, as you so find from the evidence.”
Here again the court loaded down the instruction with a modification, that if the settlement with Richardson so operated and the company with knowledge thereof approved the same, it would stand. There is nothing in the record to show any authority in Richardson to make the alleged settlement, and the question of a ratification of his acts by the company, should have been submitted separately. As the defendants submitted written instructions on the subject of the settlement pleaded in the answer, and they were given before argument, it would seem but fair that the written instructions requested by the plaintiff should not have been so modified as to embrace all the law contained in the instructions given for his adversaries.
(3) The general charge is excepted to. It is brief, but contains one manifest error. We quote an entire paragraph. After telling the jury that if the defendants were policy-holders between the 25th day of April, 1889, and December 18, 1890, they were liable to be assessed for losses, and that in contemplation of law, they were such holders, though the policy was cancelled and the premium note returned after payment was received for the total loss, unless the liability had been compromised and on that account the cancellation was made and note surrendered, the court then added: “There is no claimed liability prior to April 25, 1889; that question is settled by the Supreme •Court, as appears from the copy of the decree in *371 evidence in this case and by the copy attached to the petition. While the assessments made and ordered by said court are conclusive, it does not undertake to determine who are policy-holders, and you are not concluded by it from determining whether or not the defendants zvere such when the decree was entered; and if they zvere not; and you so find from the evidence under these instructions, including the special requests given you in charge before argument, then you will not inquire further and yo%ir verdict will be for defendants The latter part of this paragraph is not only inconsistent with what had preceded it, and there-fore misleading, but • it is erroneous in itself. There was no subsequent modification or explanation of the proposition.
The judgment of ouster was entered on the 18th day of December, 1890, and after interlocutory assessments were made, the final decree of assessment was not made until June 11, 1901, and it is under the latter that the defendants are sought to be held. The jury was told that while the assessments made by said court are conclusive, they were not concluded by it from determining whether or not the defendants zvere policyholders when the decree was entered, and that if they were not, the verdict should be for the defendants. This instruction can not stand in the light of the undisputed facts, for it is agreed on all hands, that the fire causing a total loss of the insured property, occurred on the 22d day of February, 1889, and that the loss was paid to the extent of $1,450 on the 5th day of July, 1889. When the loss was paid, the policy was receipted and surrendered to the company, and in a few *372 days thereafter the premium note was sent to defendants. Hence, the defendants were not policyholders when the assessing decree was entered. Yet, the jury was charged that if they were not holders of a policy, the verdict should be in their favor. Moreover, such a declaration of the law was misleading from another point of view. When the judgment of ouster was rendered and a trustee appointed, it became his duty to call in all outstanding policies for examination and cancellation. The discharge of this duty did not release the policy-holder from liability for losses of •the company which accrued during the life of the policy, and yet all such cancellations occurred long prior to the assessing decree.
We conclude that the trial court erred in that part of the general charge quoted above.
We .are asked to reverse, because -the trial court charged the jury concerning the settlement plead in the 4th defense in the answer, it being claimed by the plaintiff that there is no evidence whatever, that the officer of the company who conducted and made the settlement with the defendants, was authorized by the board of directors to make such settlement, and thus surrender the premium note. Two of the defendants testify that they took part in the settlement at Cincinnati, and one states that the officer representing the company, made calculations of some kind as to what would or might become due in the future on the premium note, and that in consideration of accepting a sum much less than the actual loss, the future liability on the note was released. This does not appear in the receipt for the $1,450, or other writing, but is testified to positively and no one testifies to the *373 contrary. Neither the trustee or his counsel, Mr. Reece, had found on the books of the company any acts of the board of directors authorizing the settlement claimed, and, therefore, it is said the court was not justified in charging upon that subject, especially in telling the jury in effect, that if the settlement became known to the company, and was ratified by it, it would be binding, although not authorized regularly in the first instance. Plaintiff urges strongly that there is no evidence either of an authorization or ratification, and that the court should have so charged.
We are not prepared to sanction all the plaintiff claims on this score, and to say that if the minutes of the board show no authorization to settle, nor any ratification of settlement after it was made, it could not be regarded as a defense. If the board actually took action to authorize a settlement, and the secretary failed to record it, the fact might be proved otherwise. And if the board ratified the settlement and the secretary failed to enter the fact on the minutes, may it not .be proved by parol?
There is no direct evidence in the record, either written or parol, that the officer was authorized by the board to make the settlement, and the same can be said as to ratification. If the board had subsequent meetings and found a settlement had been made of a policy for much less than its face, it might be a circumstance to be taken into account with the lapse of the time between June 5, 1889, and December 18, 1890, as tending to show knowledge of the company and its acquiescence. In .short, there is not such an absence of circumstances and events as need preclude the court from *374 submitting in proper form and order the question of a ratification of the settlement by the company. The transactions connected with the alleged settlement were rather old at the time of the trial, and for that reason, perhaps, matters have not been made clearer in the record. Several years elapsed between the alleged settlement and the bringing- of this action, and we can not say as a matter of law, that it was error for the- court to submit to the jury whether or not the company ratified what had been done.
But for the errors pointed out, we reverse the judgment and remand the case.

Judgment reversed.

Shauck, C. J., Summers, Spear and Davis, JJ., concur.