WINDSOR REDRYING COMPANY by and Through its Receivers, M. B. GILLAM and J. H. BONNER, by the Court Regularly Appointed, v. W. B. GURLEY, J. C. BELL, J. L. PRITCHARD, J. T. STOKES and W. L. POWELL, Trading as POWELL & STOKES; H. M. BELL, P. R. GILLAM and THOMAS GILLAM, Jr., Executors of THOMAS GILLAM; E. L. GATLING, MARY G. FREEMAN, Administratrix of J. W. FREEMAN; J. B. GILLAM, C. W. SPRUILL, W. S. PRITCHARD, B. GOLDSTEIN, P. R. GILLAM, Administrator of FRANCIS GILLAM; P. R. GILLAM, ASA B. PHELPS by S. E. PHELPS, Receiver, and J. E. WHITE.

(Filed 10 April, 1929.)

1. **Limitation of Actions A b—Construction of statutes in action for amount unpaid on capital stock of corporation.**

The application of the three-year statute of limitations, C. S., 441(1), will be construed in regard to the unpaid balance due a corporation by a subscriber to its capital stock, *in pari materia* with C. S., 1165, authorizing a call on them for assessments by the directors of the corporation from time to time, and C. S., 1160, creating an obligation on each stockholder, enforcible by the receiver, for the amount due on his subscription necessary to satisfy the creditors of the corporation.

**2. Limitation of Actions A b—Limitation of action for amount unpaid on capital stock of insolvent corporation.**

> While as to the stockholders the three-year statute of limitations on the amount unpaid on subscriptions to the capital stock of a corporation will run from the time of demand by the directors, it is otherwise as to the creditors where the corporation has become insolvent, for in the latter case the capital stock is regarded as a trust fund for the benefit of creditors, and the statute will begin to run from the demand of the receiver, representing the creditors, under the order of the court. C. S., 441(1), 1160, 1165.

APPEAL by plaintiffs from *Midyette, J.,* and a jury, at August Term, 1928, of BERTIE. Reversed.

A corporation, known as the Windsor Redrying Company, was organized under the laws of North Carolina, on 25 February, 1920, to further the tobacco market in the town of Windsor, N. C., Bertie County, and that section of the State, by redrying tobacco. Numerous persons subscribed for stock in the corporation. Some of the defendant subscribers to stock have paid part of their subscription and the balance is unpaid. The main defense relied on by the defendants was the statute of limitations, which each plead.

Four calls of 25 per cent for payment of subscriptions to stock were made by order of the directors and stockholders of the corporation, on each of the defendants who are being sued, between 1 March and 1 September, 1920.

H. M. Bell, Secretary of the corporation, testified: "Q. In what installments, if any, were you directed and authorized to make the calls? Ans. Twenty-five per cent. Q. In pursuance of that order by the directors did you make all the calls? Ans. Made four calls. Q. Between what times, as near as you can tell, did you make them? Ans. Between the first of March and the first of September, 1920. Q. Did you make those calls on each of these defendants who are being sued? Ans. Yes, sir."

The company has become hopelessly insolvent. A judgment had been taken on 5 November, 1923, against the corporation by W. T. Tadlock for $2,705.65, interest and costs. In an action brought by W. B. Gurley against Windsor Redrying Company, M. B. Gillam and J. H. Bonner were appointed temporary receivers on 17 January, 1924, and made permanent receivers on 6 February, 1924, to wind up the affairs of the corporation. In November, 1924, W. T. Tadlock filed petition for permission to be made a party plaintiff, in order to require the suits to be brought against stockholders who had not paid their subscriptions. Suit was ordered to be brought against delinquent stockholders by order of the court on 30 January, 1926. At February Term, 1926, the court appointed H. G. Harrington referee, and giving him instructions to ascer-

tain who the stockholders were and the names and amounts of those who had not paid their subscriptions for stock and make report to the court. In the present action no minute book of the transactions of the corporation was kept. The minutes were kept by the Secretary "on a little piece of paper." The original subscription list was lost by the president, showing the names of the incorporators and amounts subscribed. One hundred dollars reward was offered to any one who "could find it." Mr. Harrington's report was filed 20 June, 1927. Demand on the defendants, stockholders, for their unpaid subscriptions were made shortly after 20 June, 1927, by plaintiffs, receivers. This was the first and only effort made by the receivers to collect the unpaid subscriptions. The order of court was made August Term, 1927, directing the receivers to bring this action. This action was instituted on 3 February, 1928, to obtain necessary funds from the delinquent subscribers to stock to pay the outstanding indebtedness of the insolvent corporation.

It was admitted by all defendants that at the time the receivers were appointed the indebtedness of the corporation to creditors was in excess of its available assets, plus the amount of unpaid subscriptions to stock now being sued for.

The issue submitted to the jury was as follows: "Is plaintiff's cause of action against the defendants, and each of them, barred by the statute of limitations, as alleged in the answer?"

The court charged the jury, "If you believe the evidence and find the facts to be true as sworn to by the witnesses in this case to answer the issue Yes." To the charge plaintiffs excepted and assigned error. In apt time the plaintiffs asked the court to charge the jury, "that if they believe all of the evidence and find the facts to be as testified to by the witnesses to answer the issue No." This the court refused to charge, and to such refusal the plaintiffs excepted and assigned error.

*Winston & Mathews for plaintiffs.*
*J. B. Davenport, J. A. Pritchett and Stephen C. Bragaw for defendants.*

CLARKSON, J. The only question we think necessary to consider: Is this action barred by the statute of limitations? We think not.

The defendants plead the three-year statute of limitations, C. S. 441(1): "Upon a contract, obligation or liability arising out of a contract, express or implied, except those mentioned in the preceding sections."

This is a general statute and it must be construed in *pari materia* with the statutes relating to corporations.

Section 1165, C. S., in part, is as follows: "The directors of a corporation may, from time to time, make assessments upon the shares of stock

subscribed for, not exceeding, in the whole, the par value thereof, remaining unpaid; and the sums assessed shall be paid to the treasurer at such times and by such installments as the directors direct," etc., and provides for the sale of the share or shares of delinquent subscribers after notice. This provision is substantially sections 23, 24 and 25, Public Laws 1901, chapter 2, entitled "An act to revise the corporation law of North Carolina." It will be noted that this says the *directors of a corporation.*

C. S., 1160, is as follows: "Where the capital stock of a corporation *has not been paid in* and the *assets are insufficient* to *satisfy its debts and obligations,* each stockholder *is bound to pay* on each share held by him *the sum necessary to complete the amount of such share,* as fixed by the charter, or such proportion of that sum as is required to satisfy such debts and obligations," etc. This is substantially the same as Public Laws 1901, ch. 2, sec. 22.

*R. R. v. Avery,* 64 N. C., 491, is cited by defendants as authority on the plea of the statute of limitations. The gist of that case is as follows: "Where the charter of a railroad company provided, that upon the failure by subscribers to its stock to pay installments as called for, 'the directors may sell at public auction,' etc., such stock, and, in case enough were not produced thereby to satisfy the subscription, might sue for and recover the balance from such subscriber: *Held,* that upon a failure by a subscriber to pay installments as called for, it was optional with the company to bring suit against him without making sale as above or, to sell, and sue for the balance. Also that the plea of the statute of limitations barred a recovery of so much of such subscription as was included in calls made more than three years before suit was commenced." In that case the Court said, at p. 493: "Of course then, the statute commenced to run when the cause of action accrued, to wit, as to each installment, when it became due by the call of the company. 3 Parsons on Contr., 93. If a bill or note be payable by installments, the statute begins to run from the date of each installment respectively. *Gary v. Pindar,* 2 B. & P., 427."

It will be noted that the charter of the Western Railroad Company in the above case made provisions for calls similar to C. S., 1165, by its directors. That action was brought by the *corporation* against the *subscriber.* Here C. S., 1160, *supra,* makes provision for the *payment of debts* of the corporation by the *subscribers* of unpaid capital stock.

In the case of *Cooper v. Security Co.,* 127 N. C., 219, this Court said at pp. 220-1: "The opinion of the Court in *Hatch v. Dana,* 101 U. S., 205, contains a full discussion of this question, and is a direct decision on the point now before us. The syllabus of the decision, which is supported by the opinion, is in these words: 'Creditors of an incorporated

company who have exhausted their remedy at law can, in order to obtain satisfaction of their judgment, proceed in equity against a stockholder to enforce his liability to the company for the amount remaining due upon his subscription, although no account is taken of the other indebtedness of the company, and the other stockholders are not made parties, although by the terms of their subscription, the stockholders were to pay for their shares 'as called for' by the company, and the latter had not called for more than thirty per cent of the subscriptions. . . . (p. 222). The defendant company is the agent of the defendant stockholder. We will refer to *Hawkins v. Glenn,* 131 U. S., 319, in support of his Honor's view on the statute of limitations, where it is held that the statute does not run, as against subscriptions to stock payable as called for, and the principal cannot object, and say that his agent failed in his duty, and thereby defeat creditors."

It is contended by defendant that *Hawkins v. Glenn* does not bear out the construction given to it by this Court in the *Cooper case* and refers to U. S. Supreme Court Reports Digest, Vol. 6, Limitation of Actions, but under (b) this is said: "The statute of limitations does not commence to run in favor of a stockholder of a company sued for an installment due on his stock, until a *formal call or assessment has been made by the company or by an order of the Court.* (Italics ours.) *Hawkins v. Glenn,* 131 U. S., 319, 9 Sup. Ct. Rep., 739; (Anno.), 33; 184; *Glenn v. Liggett,* 135 U. S., 533, 10 Sup. Ct. Rep., 867, 34, 262; *Glenn v. Marbury,* 145 U. S., 499, 12 Sup. Ct. Rep., 914, 36, 790."

Hereafter we will draw the distinction as to the application of when the statute of limitation commences to run as between the corporation and its stockholders and the creditors and the stockholders for unpaid subscriptions to stock under our statute. The *first* when a formal call or assessment has been made by the corporation or its stockholders; *second,* by the receiver representing the creditors by an order of the court.

In *Glenn v. Marbury, supra,* at p. 507, it is said: "In conformity with *Hawkins v. Glenn,* and *Glenn v. Liggett,* we hold that limitation commenced to run, in favor of the present defendant, only from the order in the Virginia court making the call or assessment on subscribers of stock. *Glenn v. Williams,* 60 Md., 93, 122, 123."

In *Harrigan v. Bergdoll,* 270 U. S., at p. 564, this is said: "The nature, the extent, and the conditions of the liability of a stockholder on account of stock not full paid depend primarily upon the law of the State or county by which the corporation was created. *Glenn v. Liggett,* 135 U. S., 533, 548, 34 L. Ed., 262, 268, 10 Sup. Ct. Rep., 867. Compare *Benedict v. Ralner,* 268 U. S., 353, 359, 69 L. Ed., 991, 997, 45 Sup. Ct. Rep., 566. That law determines whether the liability is to the corporation or is to creditors." *Bronson v. Schneider,* 49 Ohio, 438.

The *Cooper case* was decided 27 November, 1900. In 1901, C. S., 1160, *supra,* was enacted, following the trend in the *Cooper case,* looking towards protecting creditors, and provided that where the capital stock of a corporation had not been paid in and the assets are insufficient to satisfy its debts and obligations, each stockholder *is bound to pay on each share held by him,* etc., up to the amount of their subscription to pay the debts. The directors and stockholders in the present case directed the calls which was done, but did not follow it up and enforce payment by action. If this had been done, assets may have been realized sufficient to pay the creditors in whole or in part.

It is well settled in this jurisdiction and generally in the courts of the States of this Union; that they go very far to protect corporate creditors and it is the settled doctrine that capital stock, and especially unpaid subscriptions to the capital stock constitute a trust fund for the benefit of the creditors of the corporation. Upon the faith of the capital stock, composed of paid and unpaid subscriptions, credit is given to the corporation and the public dealing with the corporation has a right to assume that the capital stock either in money or money's worth will be paid in to pay the corporation creditors. *Marshall Foundry v. Killian,* 99 N. C., 501; *Hill v. Lumber Co.,* 113 N. C., 173; *Bank v. Cotton Mills,* 115 N. C., 507; *Holshouser v. Copper Co.,* 138 N. C., 248; *Silk Co. v. Spinning Co.,* 154 N. C., 421; *Drug Co. v. Drug Co.,* 173 N. C., 502; *Bassett v. Cooperage Co.,* 188 N. C., 511. N. C. Code, 1927, Anno., secs. 1156, 7, 8.

The unpaid stock subscriptions constitute a trust fund for the benefit of creditors. The stockholders select the directors of the corporation, who are their agents and operate for the stockholders the business of the corporation, for which it was organized. A call by the directors of the corporation, duly authorized, upon the stockholders for unpaid subscriptions to stock, so far as the rights of the stockholders in the corporation are concerned, the statute of limitations would begin to run from the time demand was made as to them, but not as to creditors. The stockholders and directors are trustees for the creditors. The demand by the directors of the corporation, an agency of the stockholders, would bind the stockholders so far as their rights were concerned, in regard to the statute of limitations. The directors and stockholders being trustees for the creditors, a demand by the receivers of the insolvent corporation representing the creditors for the unpaid subscriptions, the statute of limitations would begin the run when the order of the court was made. This course is logical and orderly, and, whatever may be the decisions in other courts, which we have examined with care, we think this is consonant with justice and good faith to those who give credit to a corporation relying on the capital stock to be paid. In reaching this conclusion,

we give force to C. S., 1160, passed for the protection of creditors. We think that the statute of limitations begins to run when the receiver appointed to wind up the affairs of an insolvent corporation has been ordered by the court to make a call and has made a demand on the stockholders who had not paid their subscriptions. In the present action this demand was made by order of the court by the receivers shortly after 20 June, 1927, and the suit commenced on 3 February, 1928, and, therefore, this action is not barred by the statute of limitations. For the reasons given, the judgment of the court below is

Reversed.